IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ST. JOHN'S HOSPITAL OF THE HOSPITAL SISTERS OF THE THIRD ORDER OF ST. FRANCIS, <u>PATRICIA FUGATE</u>, and <u>ROBERT FUGATE</u>, <br><br>  Plaintiffs, <br><br> v. <br><br> NATIONAL GUARDIAN RISK RETENTION GROUP, INC., EMERGENCY CONSULTANTS, INC., CENTRAL ILLINOIS EMERGENCY PHYSICIANS, P.C., a/k/a CENTRAL ILLINOIS EMERGENCY PHYSICIANS, LLP, JAMES M. JOHNSON, M.D., ROBERT M. WILLIAMS, M.D., and DERIK K. KING, M.D., <br><br>  Defendants. | ) ) ) ) ) ) ) ) ) ) No. 15-cv-3292-SEM-TSH ) ) ) ) ) ) ) ) ) ) ) |

**SECOND AMENDED COMPLAINT**

**JURSIDICTION**

1) This is an action for damages brought pursuant to 18 U.S.C. §§ 1961 - 1968.  Jurisdiction lies pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964.  This action also alleges fraud, common law conspiracy, <u>breach of contract, and breach of fiduciary duty</u>.  The Court can and should exercise supplemental jurisdiction over these claims, pursuant to 28 U.S.C. § 1367, as they are so related to the other claim in the action (which is already under the Court's original jurisdiction) that they form part of the same case or controversy under Article 3 of the

United States Constitution.  Additionally, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 in that no plaintiff is from the same state as any defendant, and the amount in controversy exceeds $75,000, exclusive of costs and interest.

### **PARTIES**

2) Plaintiff St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis is a not-for-profit corporation, authorized to do business in the State of Illinois, and the operator of a certain hospital in Springfield, Illinois.

3) <u>That Doctors John Byrnes, Aamir Banday, and Elizabeth McDaniel have assigned their interests in causes of action arising from: the Agreement for Emergency Department Management Services (attached to the instant Complaint as Exhibit A); St. John's Hospital's Medical Staff Bylaws; the Medical Staff Recredentialing Application, Attestation, Agreement and Release; and the National Guardian Risk Retention Group, Inc. Policy number PL 1021 (attached to the instant Complaint as Exhibit B). Doctors John Byrnes, Aamir Banday, and Elixabeth McDaniel have assigned those claims to Plaintiffs St. John's Hospital, Patricia Fugate, and Robert Fugate.  These Assignment Agreements are attached to the instant Complaint as Group Exhibit C.</u>

4) Defendant National Guardian Risk Retention Group, Inc., is a Hawaii corporation with it's principal place of business in Traverse City, Michigan.  They are in the business of writing

liability and other types of insurance.

5) Defendant Emergency Consultants, Inc., is a Michigan corporation with it's principal place of business in Traverse City, Michigan.  They are in the business of generating and overseeing a network of physician groups, and they hold themselves out as the representative, actual agent, implied agent, apparent agent and/or employee of co-defendant National Guardian.

6) Defendant Central Illinois Emergency Physicians, P.C., a/k/a Central Illinois Emergency Physicians, LLP, is an Illinois limited liability partnership with it's principal place of business in Traverse City, Michigan.  The Central Illinois Emergency Physicians limited liability partnership is comprised of two partners: Robert M. Williams and James M. Johnson, both of whom are citizens of Michigan.  At all times relevant to this Complaint, they provided physician services to Illinois medical facilities, including plaintiff St. John's Hospital.

7) Defendant James M. Johnson, M.D., is a medical doctor, licensed to practice in Michigan and a citizen and resident of Michigan; he was a founder of Emergency Consultants, Inc., and at various times relevant to this action has served as Managing Partner of Central Illinois Emergency Physicians, as well as the Chief Executive Officer of National Guardian Risk Retention Group, Inc.

8) Defendant Robert M. Williams, M.D., is a medical doctor, licensed to practice in Michigan and a citizen and resident of Michigan; he was a founder of Emergency Consultants, Inc., and at all times relevant to this action has served as their Chairman of the Board.

9) Defendant Derik K. King, M.D., is a medical doctor, licensed to practice in Virginia and a citizen and resident of Virginia; since 2007, he has served as the President and Chief Executive Officer of Emergency Consultants, Inc.

## FACTS

10) On March 22, 2011, Patricia and Robert Fugate filed a medical malpractice complaint in Madison County, IL, 11-L-270, alleging negligence against several defendants, including St. John's Hospital, Emergency Consultants, Inc., and three doctors affiliated with Emergency Consultants: Elizabeth McDaniel, D.O.; Aamir Banday, M.D.; and John Byrnes, M.D.

11) It is specifically alleged that Drs. McDaniel, Banday and Byrnes were agents and/or employees of St. John's at all times relevant to the cause of action - - namely May 3, 4, and 11 of 2009.

12) During this relevant time period, there was in effect an Agreement for Emergency Department Management Services between St. John's Hospital and Central Illinois Emergency Physicians which provided, *inter alia*, as follows in paragraph 9:

> "**Liability Insurance**. Partnership, at no cost to Hospital, shall ensure that personnel provided by it shall maintain professional liability insurance coverage (primary and excess) in an amount not less than $2,000,000 per occurrence and $4,000,000 annual aggregate (only $1,000,000 per occurrence and $3,000,000 annual aggregate will be provided until 11/1/01, at which time the full coverage will commence), subject to the terms and conditions of the individual policies.

(Exhibit A).

13) This paragraph was subsequently amended to require professional liability insurance coverage (primary and excess) in an amount not less than $1,000,000 per occurrence and $3,000,000 annual aggregate.

14) For purposes of the instant action, "personnel provided" (as used in paragraph 9 of the Agreement) includes Drs. McDaniel, Banday and Byrnes.

15) At all relevant times, St. John's Hospital Medical Staff Bylaws required all medical staff to have professional liability insurance in the amount of $1,000,000 per occurrence and $3,000,000 annual aggregate; this requirement applied to each individual staff member.

16) On April 7, 2008, Doctor McDaniel executed a Medical Staff Recredentialing Application, Attestation, Agreement and Release wherein she covenanted to abide by this requirement; Doctor Banday executed same on April 4, 2008, and Doctor Byrnes

executed same on April 8, 2008.

17) Doctors McDaniel, Banday, and Byrnes also submitted Certificates of Insurance to St. John's Hospital, reflecting that they were additional insureds covered by a policy issued by National Guardian to Central Illinois Emergency Physicians which provides coverage in the amount of $1,000,000 per occurrence and $3,000,000 annual aggregate.

18) The number for this specific policy is PL1021 ("The Policy"), and it was in effect from January 1, 2009 to January 1, 2010 (attached to the instant Complaint as Exhibit B).

19) The Policy defines an "Additional Named Insured" as "a physician or physician extender, employee, physician partner or independent contractor physician or physician extender specifically listed as an Additional Named Insured in the "schedule of Additional Named Insureds."

20) Defendants National Guardian, Emergency Consultants, and Central Illinois Emergency Physicians have taken the position that the applicable coverage to the underlying Fugate litigation is the shared amount of $1,000,000 rather than $1,000,000 per individual defendant physician.

21) National Guardian, Emergency Consultants, Central Illinois Physicians, Dr. Johnson, Dr. Williams, and Dr. King each agreed to deny the hospital its full insurance coverage and in furtherance of that position each affirmatively took the position

that only $1 million in coverage applied to the Fugate case.

22) This position is contrary to the plain language of both the Insurance Policy and Services Agreement described above, both of which were signed by Defendant Dr. Johnson.

23) Doctors McDaniel, Banday and Byrnes, through their counsel, have joined in St. John's position that each doctor is entitled to $1,000,000 in individual coverage, and that the three do not share $1,000,000 in coverage.

## COUNT I - RICO

24) Plaintiffs adopt and incorporate paragraphs 1 through and including 23 herein.

25) The business activities of Defendants National Guardian, Emergency Consultants, Inc., Central Illinois Emergency Physicians, and the named individual defendants - - as fully described above - - constitute an enterprise affecting interstate commerce, as is defined in 18 U.S.C. 1961(4).

26) This enterprise is an association-in-fact; the common purpose is capitalistic, the structure and relationship is set forth in the "PARTIES" sub-heading above, and this enterprise is ongoing in duration.

27) Each defendant identified in paragraph 23, *supra*, are either employed by or associated with this enterprise at all relevant times, and each participated in, either directly or indirectly, the conduct of the affairs of the enterprise.

28) Each participated through a pattern of racketeering activity, to wit:

    a) As was plainly spelled out by contract, and further memorialized by individually-executed attestations, each doctor was entitled to $1,000,000 in individual coverage, for a total of $3,000,000;

    b) This notwithstanding, Defendants insist that the agreements signed by Dr. Johnson do not provide what they plainly and self-evidently do;

    c) The net result would be the elimination of a total of $2,000,000 in coverage which otherwise would have been - - and should be - - "in play" for purposes of the Fugate lawsuit;

    d) At all times relevant, the Illinois Criminal Code has defined Commercial Bribery as follows: "A person commits commercial bribery when he confers, or offers or agrees to confer, any benefit upon any employee, agent or fiduciary without the consent of the latter's employer or principal, with intent to influence his conduct in relation to his employer's or principal's affairs." 720 ILCS 5/29A-1.

    e) At all times relevant, the Illinois Criminal Code has defined Conspiracy as follows: "A person commits the offense of conspiracy when, with intent that an offense be committed, he or she agrees with another to the commission of that offense. No person may be convicted of conspiracy to commit an offense unless an act in furtherance of that agreement is alleged and proved to have been committed by him or her or by a co-conspirator." 720 ILCS 5/8-2(a).

    f)    At all times relevant, the Illinois Criminal Code has set forth the applicable penalties for the violations described above as follows: "If the benefit offered, conferred, or agreed to be conferred, solicited, accepted, or agreed to be accepted in violation of this Article is $500,000 or more, the offender is guilty of a Class 3 felony" 720 ILCS 5/29A-3(b); and "Except as otherwise provided in this subsection or Code, a person convicted of conspiracy to commit a Class 3 felony shall be sentenced for a Class 4 felony" 720 ILCS 5/8-2(c)(1)(D).

    g)    That at some time prior to taking their coverage position, a combination of Drs. Johnson, Williams, and King reached an illegal agreement to deny the contracted-for coverage, and a further agreement to offer each individually-covered doctor an inducement to acquiesce in this position; each to-be-offered inducement constitutes a separate offense, such that the requisite pattern has been alleged.

    h)    That the net savings of $2,000,000 to defendant National Guardian constitutes an amount in excess of the $500,000 statutory cut-off, such that each contemplated inducement constitutes felony conspiracy to commit commercial bribery as defined by Illinois statute, and each defendant is properly within the ambit of RICO.

    i)    The agreement and subsequent position taken in the Fugate case, namely denying the existence of contractually-provided coverage, was and remains typical of the enterprise.

29) <u>That as a result of the enterprise's pattern of racketeering, Plaintiff's property and business interests were</u>

<u>injured by the improper denial of two million dollars in coverage</u>.

WHEREFORE, Plaintiff seeks judgment against Defendants for damages, treble damages, costs, reasonable attorneys fees, other equitable relief under federal civil-RICO law, and any other equitable or legal remedies authorized by law.

### COUNT II - FRAUD
St. John's Hospital v. Defendants

30) Plaintiff adopts and incorporates paragraphs 1 through and including 23 herein.

31) That all times herein mentioned, the various defendants did in fact represent to the plaintiff that at all necessary times the three defendant-doctors each had $1,000,000 in individual coverage, for an aggregate amount of $3,000,000 available for potential satisfaction of the Fugate lawsuit.

32) That at all times these representations were made, they were - - and constituted - - false statements of material fact.

33) That at all times herein mentioned, the various defendants herein knew that this representation was false, and knew that they had no intention of ever abiding by the plain language of the policy.

34) That, nonetheless, the various defendants made these representations with the full intention of plaintiff relying on them, to wit:

    a)    Credentialing and otherwise according staff privileges at Plaintiff's hospital to the three defendant-doctors, because Plaintiff believed that each defendant-doctor had the requisite $1,000,000 in individual coverage, and was therefore in compliance with St. John's Hospital bylaws.

35) That plaintiff did in fact reasonably believe these statements, and acted in justifiable reliance upon same, namely by permitting the defendant-doctors to practice at St. John's.

36) That as a direct and proximate result of this reliance, the plaintiff stands to be damaged because it can be held vicariously liable and subject to satisfaction of a judgment by Patricia and Robert Fugate in excess of the claimed $1,000,000 aggregate coverage.

WHEREFORE, Plaintiff seeks judgment against Defendants for damages flowing from the breaches, costs, and any other equitable or legal remedies authorized by law.

**COUNT III - CONSPIRACY**
St. John's Hospital v. Defendants

37) Plaintiff adopts and incorporates paragraphs 1 through and including 36 herein.

38) That at all times herein mentioned the various defendants herein, both with each other and collectively, did conspire and otherwise agree to unlawfully accomplish the breaches of both the insurance and bylaw coverage agreements.

39) That in furtherance of same, each defendant, independently and in consultation and agreement with the other

defendants to this action, did overtly acquiesce in the position that all doctors share $1,000,000 in insurance coverage, each acquiescence constituting a tortious act.

WHEREFORE, Plaintiff seeks judgment against Defendants for damages flowing from the conspiracy, costs, and any other equitable or legal remedies authorized by law.

### COUNT IV - BREACH OF CONTRACT

40) Plaintiff adopts and incorporates paragraphs 1 through and including 39 herein.

41) That doctors Elizabeth McDaniel, Aamir Banday, and John Byrnes have assigned their interests in these causes of action to Plaintiffs St. John's Hospital, Patricia Fugate, and Robert Fugate.

42) That Doctors McDaniel, Banday, and Byrnes were at all times relevant Additional Named Insureds on the National Guardian Risk Retention Group, Inc. Policy, policy number PL 1021 ("the Policy").

43) That St. John's Hospital was at all times relevant a party to the Agreement for Emergency Department Management Services ("the Agreement") with Defendant Central Illinois Emergency Physicians, LLP.

44) That the Policy and the Agreement are valid contracts.

45) That Plaintiffs and their assignors performed their obligations under both the Policy and the Agreement.

46) That the Defendants' position of $1,000,000 total coverage described above is contrary to the plain language of both the Policy and the Agreement and constitutes breach of contract.

47) That as a direct and proximate result of this breach, Plaintiffs were deprived of $2,000,000 of contracted-for coverage. They have incurred and become liable for both actual and punitive damages, all to their damage in a substantial amount.

WHEREFORE, Plaintiffs demand actual damages in an amount greater than $2,000,000 (two million dollars), punitive damages in an amount greater than $2,000,000 (two million dollars), plus costs.

### COUNT V - BREACH OF FIDUCIARY DUTY

48) Plaintiff adopts and incorporates paragraphs 1 through and including 47 herein.

49) That Defendant Central Illinois Emergency Physicians entered into partnership agreements with each of Drs. Elizabeth McDaniel, Aamir Banday, and John Byrnes, to supply professional medical services to medical facilities, benefitting both Central Illinois Emergency Physicians and its individual physician partners; with Central Illinois Emergency Physicians managing and controlling business and affairs, and with the individual physician partners practicing medicine for medical facility

customers; and with shared interest in the profits and losses of the partnership between Central Illinois Emergency Physicians and its physician partners.

50) That Central Illinois Emergency Physicians was the managing partner in the partnership with the individual physicians.

51) That Central Illinois Emergency Physicians represented to its physician partners that it would provide the physician partners with professional liability insurance through National Guardian Risk Retention Group in an amount of $3,000,000 annual aggregate coverage.

52) By virtue of their partnership, Central Illinois Emergency Physicians owed a fiduciary duty to Doctors McDaniel, Banday, and Byrnes, and owed a specific fiduciary duty to Doctors McDaniel, Banday, and Byrnes to provide professional liability insurance in the coverage amount represented.

53) That the Defendants' position of $1,000,000 total coverage described above is contrary to the partnership agreement, contrary to the representations made by managing partner Central Illinois Emergency Physicians, and constitutes breach of fiduciary duty.

54) That as a direct and proximate result of this breach, Plaintiffs were deprived of $2,000,000 in coverage.  They have incurred and become liable for both actual and punitive damages,

all to their damage in a substantial amount.

WHEREFORE, Plaintiffs demand actual damages in an amount greater than $2,000,000 (two million dollars), punitive damages in an amount greater than $2,000,000 (two million dollars), plus costs.

                                                       Respectfully submitted:

                                                       /s/Thomas Q. Keefe, Jr.
                                                       THOMAS Q. KEEFE, JR.
                                                       IL REG NO. 03123418
                                                       Attorney for Plaintiff

**KEEFE, KEEFE & UNSELL, P.C.**
**#6 Executive Woods Court**
**Belleville, IL  62226**
**618/236-2221 (Telephone)**
**618/236-2194 (Facsimile)**
debbie@tqkeefe.com
isuedocs77@gmail.com

## CERTIFICATE OF SERVICE

    I hereby certify that on February 9th, 2016, I electronically filed:  Plaintiff's **SECOND AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Elisha S. Rosenblum - eli.rosenblum@kitch.com
Michael T. Walsh - mike.walsh@kitch.com
Alex E. Campos - acampos@cassiday.com

                                                       /s/Thomas Q. Keefe, Jr.
                                                       THOMAS Q. KEEFE, JR.
                                                       IL REG NO. 03123418
                                                       Attorney for Plaintiff