**E-FILED**
Wednesday, 01 June, 2016  09:14:06 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ST. JOHN'S HOSPITAL of the<br>HOSPITAL SISTERS of the<br>THIRD ORDER<br>OF ST. FRANCIS,<br>PATRICIA FUGATE, and<br>ROBERT FUGATE, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 15-cv-3292 |
| NATIONAL GUARDIAN RISK<br>RETENTION GROUP, INC.,<br>EMERGENCY CONSULTANTS,<br>INC., CENTRAL ILLINOIS<br>EMERGENCY PHYSICIANS,<br>P.C., a/k/a CENTRAL ILLINOIS<br>EMERGENCY PHYSICANS,<br>LLP, JAMES M. JOHNSON,<br>M.D., ROBERT M. WILLIAMS,<br>M.D., and DERIK K. KING, M.D., | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## <u>REPORT AND RECOMMENDATION</u>

THOMAS P. SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court for a Report and

Recommendation on Defendant National Guardian Risk Retention Group,

Inc. (National Guardian) Motion to Dismiss Plaintiffs' Second Amended

Complaint (d/e 55) (Motion 55); and Defendants Emergency Consultants,

Inc. (Emergency Consultants), Central Illinois Emergency Physicians

(Emergency Physicians), P.C. a/k/a Central Illinois Emergency Physicians, LLP, James A. Johnson, M.D., Robert M. Williams, M.D., and Derik K. King, M.D.'s Rule 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint (d/e 53) (Motion 53) (collectively the Motions).  For the reasons set forth below, this Court recommends that the Motions should be allowed in part, with leave to replead Counts II through V of the Second Amended Complaint.

## STATEMENT OF FACTS

For purposes of a motion to dismiss for failure to state a claim, this Court  accepts the well-pleaded allegations in the Second Amended Complaint (d/e50) (Complaint) as true and are taken in the light most favorable to St. John's.  Independent Trust Corp. v. Stewart Information Services Corp., 665 F.3d 930, 934 (7th Cir. 2012).  The Complaint alleges the following.

St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis (St. John's) is an Illinois not-for-profit corporation with its principal place of business in Illinois.  National Guardian is a Hawaii corporation with its principal place of business in Michigan; Emergency Consultants is a Michigan corporation with its principal place of business in Michigan; and

Emergency Physicians is an Illinois limited liability partnership with its principal place of business in Michigan.  Second Amended Complaint (d/e 50) (Complaint), ¶¶ 2, 4-6.

Defendants, Dr. James M. Johnson, M.D., is a citizen of Michigan; Robert M. Williams, M.D., is a citizen of Michigan; and Dr. Derik K. King., M.D., is a citizen of Virginia.  Dr. Johnson and Dr. Williams were founders of Emergency Consultants.  Drs. Johnson and Williams are the only two partners of Emergency Physicians.  Dr. Johnson has served as the Managing Partner of Emergency Physicians and Chief Executive Officer of National Guardian.  Dr. Williams was also a founder of Emergency Consultants and has served as Emergency Consultants' Chairman of the Board.  Dr. King has served as President and Chief Executive Officer of Emergency Consultants.  Complaint, ¶¶ 7-9.

The Plaintiffs do not allege the citizenship of the individual Plaintiffs Patricia Fugate and Robert Fugate.

St. John's operates St. John's Hospital in Springfield, Illinois (Hospital).  In January 2002, St. John's and Emergency Physicians entered into an agreement entitled Agreement for Emergency Department Management Services (Agreement).  Complaint, Exhibit A, Agreement, at 10.  The Agreement was effective as of October 1, 2001.  Agreement, at 1.

The Agreement referred to Emergency Physicians as "Partnership."  Under

the terms of the Agreement, Emergency Physicians agreed to manage the

Hospital's emergency room facilities and retain physicians (ER Physicians)

to practice in the Hospital's emergency room facilities.  See Agreement,

§ 5.

The Agreement contained the following provision regarding

professional liability insurance for ER Physicians:

> Liability Insurance.  Partnership, at no cost to Hospital, shall
> ensure that personnel provided by it shall maintain professional
> liability insurance coverage (primary and excess) in an amount
> not less than $2,000,000 per occurrence and $4,000,000
> annual aggregate (only $1,000,000 per occurrence and
> $3,000,000 annual aggregate will be provided until 11/1/01, at
> which time the full coverage will commence), subject to the
> terms and conditions of the individual policies.

Agreement, § 9.  The parties subsequently amended § 9 to require

Emergency Physicians to ensure that personnel provided by it shall

maintain professional liability insurance coverage (primary and excess) in

an amount not less than $1,000,000 per occurrence and $3,000,000 annual

aggregate (the Amendment).  Complaint, ¶ 12.

The Hospital's Medical Staff Bylaws required all medical staff,

including the ER Physicians provided by Emergency Physicians, to have

professional liability insurance in the amount of $1,000,000.00 per

occurrence and $3,000,000.00 annual aggregate.  Complaint, ¶ 15.

Emergency Physicians entered into partnership agreements with practicing physicians (Physician Partners) who would practice as ER Physicians in emergency rooms.  Under the terms of these partnership agreements, each Physician Partner practiced medicine at medical facilities that had contracts with Emergency Physicians.  Emergency Physicians was the managing partner of these partnerships.  Emergency Physicians managed and controlled the business affairs of these partnerships.  Complaint, ¶ 49-50.

Emergency Physicians represented to the Physician Partners "that it would provide the physician partners with professional liability insurance through National Guardian Risk Retention Group in an amount of $3,000,000.00 annual aggregate coverage."  Complaint, ¶ 51.

In April 2008, Dr. Elizabeth McDaniel, O.D.; Dr. Aamir Banday, M.D.; and Dr. John Byrnes, M.D., were Physician Partners and ER Physicians at the Hospital pursuant to the terms of the Agreement.[1]  In April 2008, Drs. McDaniel, Banday, and Byrnes each executed a Medical Staff Recredentialing Application, Attestation, Agreement and Release (Medical Staff Agreement and Release) with St. John's.  Under the terms of the Medical Staff Agreement and Release, Drs. McDaniel, Banday, and Byrnes

---

[1] It is unclear from the Complaint whether these three doctors started working at the Hospital at that time.

each covenanted to have professional liability insurance in the amount of
$1,000,000.00 per occurrence and $3,000,000.00 annual aggregate.
<u>Complaint</u>, ¶ 16.

In or around April 2008, Drs. McDaniel, Banday, and Byrnes each
submitted a Certificate of Insurance to St. John's.[2]  The Certificate of
Insurance certified that Drs. McDaniel, Banday and Byrnes were "additional
insureds covered by a professional liability insurance policy issued by
National Guardian to Central Illinois Emergency Physicians which provides
coverage in the amount of $1,000,000 per occurrence and $3,000,000
annual aggregate."  <u>Complaint</u>, ¶ 17.

From January 1, 2009, to January 1, 2010, Drs. McDaniel, Banday,
and Byrnes were listed as Additional Named Insureds on a professional
liability insurance policy number PL1021 (Policy) issued by National
Guardian.  The Policy defined "Additional Named Insured" as "a physician
or physician extender, employee, physician partner or independent
contractor physician or physician extender specifically listed as an
Additional Named Insured in the 'schedule of Additional Named Insureds.'"
<u>Complaint</u>, ¶¶ 18-19.  The Policy referred to National Guardian as the
"Company."  The Declarations page of the Policy stated that the limit of

---

[2] The Court infers that the Certificates of Insurance were submitted with the Medial Staff Agreements and Releases.  The Complaint is not clear on this point.

liability per occurrence was $1,000,000.00, and the Annual Aggregate Limit was $3,000,000.00.  <u>Complaint</u>, Exhibit B, <u>Policy, Declarations Page dated January 1, 2009</u>.  Emergency Physicians was the Named Insured under the Policy.  <u>Policy</u>, <u>Endorsement #1</u>.

The Coverage provision of the Policy stated, in relevant part:

I.    <u>COVERAGE</u>

The Company, in consideration of an agreed premium and subject to the Declarations, Insuring Agreements, General Agreements, Conditions and Limitations and other terms hereof, will pay on behalf of the <u>Insured</u> those sums which the <u>Insured</u> is legally obligated to pay as <u>Damages</u> because of <u>injury</u> from a <u>Medical Incident</u> or <u>Related Medical Incident</u> which occurs subsequent to the <u>Insured's</u> date of hire and during the policy period suffered by any person arising out of the rendering of or failure to render <u>Medical Professional Services</u> during the policy period to which this insurance applies.

The Company, as it deems necessary and expedient, shall have the exclusive right to investigate, defend or appeal, negotiate or settle any claim or <u>Suit</u> which, in the opinion of the Company, is or may be insured under this policy. We may at our discretion investigate any <u>Occurrence</u> and settle any claim or <u>Suit</u> that may result. But:

(1) The amount we will pay for Damages is limited as described In LIMITS OF INSURANCE; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

<u>Policy</u>, § I (emphasis in the original).

The Policy did not have a provision entitled "Limits of Insurance."

The Policy, however, had a provision entitled "Limits of Liability."  The

Limits of Liability provision stated in relevant part:

III.   LIMITS OF LIABILITY

A.   Per Occurrence Limit of Liability

The limit of liability stated in the Declarations as applicable to each Occurrence is the limit of the Company's Liability for payment of Damages arising out of any Medical Incident or Related Medical Incidents. All claims arising out of a Medical Incident or Related Medical Incidents shall be considered a single Occurrence for the purpose of this Insurance.  Any pre-judgment interest will be included within the Per Occurrence Limit of Liability listed in the Declarations.

The Per Occurrence Limit of Liability listed in the Declarations shall apply separately to each Additional Named Insured specifically listed in the Schedule of Additional Named Insureds (Endorsement # 2).  In the event that a claim is made or Suit is brought against an Additional Named Insured as well as the Named Insured and/or any other Insured, the Named Insured and/or any Insured other than the Additional Named Insured will share the Per Occurrence Limit of Liability applicable to the Additional Named Insured. In the event that a claim is made or Suit is brought against more than one Additional Named Insured as well as the Named Insured and/or any Insured other than an Additional Named Insured, the Named Insured and/or any Insured other than an Additional Named Insured will share in the Per Occurrence Limits applicable to the Additional Named Insureds and any Damages assessed against the Named Insured and/or any Insured other than an Additional Named Insured shall be apportioned equally to each Additional Named Insured's Per Occurrence Limit of Liability.  In the event that a claim is made or Suit is brought solely against the Named Insured and/or an Insured other than an Additional Named Insured, the Named Insured and any Insureds other than an

Additional Named Insured shall share one Per Occurrence Limit
of Liability.

B.      Aggregate Limit of Liability

Regardless of the number of Named Insureds, Insureds, and
Additional Named Insureds, the Aggregate Limit of Liability
stated in the Declarations is Company's total Limit of Liability
for all Damages for all claims arising from Medical Incidents.

Policy, §§ III. A. and B. (emphasis in the original).

The Policy defined "Damages:"

"DAMAGES" means the monetary portion of any judgment,
award or settlement, including interest thereon, which shall not
exceed the stated amount for any Occurrence.  The Company's
total liability during any one policy year shall not exceed the
stated Annual Aggregate.  "Damages" do not Include civil or
criminal fines, sanctions or penalties, punitive damages, or any
sum awarded in excess of compensatory damages, or any
multiple of compensatory damages, whether imposed pursuant
to statute or otherwise.

Policy, § IV.B (emphasis in the original).

The Policy defined "Occurrence:"

"OCCURRENCE" means a Medical Professional Service or a
series of Interrelated Medical Professional Services rendered
by an Insured, causing injury to third party persons which is
neither intended nor expected from the standpoint of an
Insured.  A series of related medical treatments to the same
person shall be considered one Occurrence regardless of (1)
the number of claims made or Suits brought and (2) the number
of Insureds named in such claims or Suits.

Policy, § IV.J (emphasis in the original).

On March 22, 2011, Plaintiffs Patricia and Robert Fugate (the Fugates) filed a medical malpractice action in Madison County, Illinois, Case No. 11-L-70 (Fugate Litigation), against several defendants, including St. John's; Emergency Consultants; and ER Physicians Drs. McDaniel, Banday, and Byrnes.  The Fugates alleged that their claim arose from events that occurred May 3, 4, and 11, 2009, during the period that Drs. McDaniel, Banday, and Byrnes were additional insureds on the Policy.  The Fugates further alleged that Drs. McDaniel, Banday, and Byrnes were agents and/or employees of St. John's during the relevant period in May 2009. Complaint, ¶¶ 10-11.  St. John's has filed a third party claim against Emergency Physicians for express indemnification.  Motion 53, Exhibit 1, Fugate Litigation Docket Sheet, at 2 docket entry dated May 8, 2015.[3]

The Plaintiffs have not alleged the details underlying the claims in the Fugate Litigation.  A decision in a related declaratory judgment action, however, states that the Fugates alleged that Drs. McDaniel, Banday, and Byrnes failed to timely diagnose Patricia Fugate's mastoiditis.  As a result Patricia Fugate developed a brain abscess that required surgery, and she

---

[3] The Court may consider matters of public record such as orders in judicial proceedings when deciding motions to dismiss under Rule 12(b)(6) without converting the motion to a motion for summary judgment. See Ennenga v. Starns, 677 F.3d 766, 773-74 (7th Cir. 2012).  The Fugate Litigation Docket Sheet referred to St. John's claim against Emergency Physicians as a counterclaim; however, the Fugates did not name Emergency Physicians as a defendant in the Fugate Litigation. See Motion 35, Exhibit A, Order in Fugate Litigation entered June 22, 2015 (Fugate Dismissal Order).  St. John's claim against Emergency Physicians is more accurately described as a third party claim.

suffered brain damage as a result of the surgery.  See St. John's Hospital

Sisters of the Third Order of St. Francis v. National Guardian Risk

Retention Group, Inc., 2015 IL App (4th) 140181-U ¶ 10, 2015 WL 2190923,

at *1 (May 11, 2015).

The Plaintiffs allege that Defendants National Guardian, Emergency

Consultants, and Emergency Physicians "have taken the position that the

applicable coverage to the Fugate litigation is the shared amount of

$1,000,000 rather than $1,000,000 per individual defendant physician."

Complaint, ¶ 20.  In addition, all the Defendants "agreed to deny the

hospital its full insurance coverage and in furtherance of that position each

affirmatively took the position that only $1 million in coverage applied to the

Fugate case."  Complaint, ¶ 21.  St. John's alleges that, "This position is

contrary to the plain language of both the . . . Policy and . . . Agreement . .

., both of which were signed by Defendant Dr. Johnson."  Complaint, ¶ 22.

The Plaintiffs allege that the "combination of Drs. Johnson, Williams

and King" agreed to offer an inducement to Drs. McDaniel, Banday, and

Byrnes to acquiesce in the Defendants' position regarding the limits on

coverage in the Fugate Litigation described in the preceding paragraph of

this Opinion.  Complaint, ¶ 28(g).  Drs. McDaniel, Banday, and Byrnes,

however, did not acquiesce.  Drs. McDaniel, Banday, and Byrnes, rather,

have taken the position that each has $ 1,000,000.00 in individual coverage

for the occurrence that is the basis of the Fugate Litigation, for an

aggregate coverage of $3,000,000.00 for the Fugate Litigation.  <u>Complaint</u>,

¶ 23.

     The Plaintiffs further allege,

> That all times herein mentioned, the various defendants
> did in fact represent to the plaintiff that at all necessary times
> the three defendant-doctors each had $1,000,000 in individual
> coverage, for an aggregate amount of $3,000,000 available for
> potential satisfaction of the Fugate lawsuit.

<u>Complaint</u>, ¶ 31.  The Plaintiffs allege that the Defendants knew that these

representations were false when made and the Defendants "had no

intention of abiding by the plain language of the policy."  <u>Complaint</u>,

¶  32-33.

     The Plaintiffs allege that the Defendants further intended that St.

John's rely on the false representations, and St. John's did in fact rely on

the false representations by permitting Drs. McDaniel, Banday, and Byrnes

to practice at the Hospital.  St. John's alleges that it was injured by these

false representations as follows:

> That as a direct and proximate result of this reliance, the
> plaintiff stands to be damaged because it can be held
> vicariously liable and subject to satisfaction of a judgment by
> Patricia and Robert Fugate in excess of the claimed $1,000,000
> aggregate coverage.

<u>Complaint</u>, ¶ 36.  St. John's elsewhere alleges that its "property and business interests were injured by the improper denial of two million dollars in coverage."  <u>Complaint</u>, ¶ 29.

The Plaintiffs further allege that the Defendants conspired "to unlawfully accomplish the breaches of the [Policy] and bylaw coverage agreements."  <u>Complaint</u>, ¶ 38.  The Plaintiffs allege that each Defendant "did overtly acquiesce in the position that all doctors share $1,000,000.00 in insurance coverage, each acquiescence constituting a tortious act." <u>Complaint</u>, ¶ 39.

The Complaint alleges that the Plaintiffs "have incurred and become liable for actual and punitive damages in a substantial amount."  <u>Complaint</u>, ¶¶ 47, 54.  The Complaint does not identify which Plaintiff or Plaintiffs have become liable for actual and punitive damages.

On June 22, 2015, the Fugates settled their claims against St. John's in the Fugate Litigation.  <u>Motion 35</u>, Exhibit A, <u>Order in Fugate Litigation entered June 22, 2015 (Fugate Dismissal Order)</u>.  The Fugate Dismissal Order does not recite what, if anything, St. John's paid as part of the settlement.  The Fugate Dismissal Order, however, states that St. John's cross-claims and third party claims against Drs. McDaniel, Banday, Byrnes,

Emergency Physicians, and Emergency Consultants remained pending.
Id.

Drs. McDaniel, Banday, and Byrnes have assigned to Plaintiffs
St. John's, Patricia Fugate, and Robert Fugate their interests in any causes
of action arising from the Agreement, St. John's Bylaws, Medical Staff
Agreement and Release, and the Policy.  Complaint, ¶ 3, Exhibit C,
Assignment Agreements.  The Assignment Agreements indicate that the
Plaintiffs' claims in the Fugate Litigation against Drs. McDaniel, Banday,
and Byrnes have been released.  The Assignment Agreements are
attached to the Complaint as Exhibit C, and are part of the Complaint for all
purposes.  Fed. R. Civ. P. 10(c).  The Assignment Agreements recite that
St. John's, Patricia Fugate, and Robert Fugate (the Assignees) have
"existing and/or potential claims" against Drs. McDaniel, Banday, and
Byrnes (Assignors).  Assignment Agreements, at 2, Recital No. 20.  The
Assignment Agreements recite that the parties want to resolve "Assignee's
existing and/or potential claims" against the Assignors.  Id., at 2 Recital No.
21.  The Assignment Agreements state that the Assignees released their
claims against Assignors in exchange for the assignment of the Assignors'
claims against the Defendants.  Id., at 3 ¶¶ 1, 5.

## ANALYSIS

Dismissal is proper when a complaint fails to state a claim on which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The Federal Rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief," and allegations must be "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2) & (d)(1).  While a complaint need not contain detailed, specific factual allegations, it must contain sufficient facts to "state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim is plausible on its face if it provides the defendant fair notice of what the claim is and the grounds upon which it rests.  Independent Trust Corp., 665 F.3d at 934-35; George v. Smith, 507 F.3d 605, 608 (7th Cir. 2007).  Dismissal under Rule 12(b)(6) is appropriate when "the factual detail in a complaint [is] so sketchy that the complaint does not provide the type of notice of the claim to which the

defendant is entitled under Rule 8." <u>Airborne Beepers & Video, Inc. v. AT & T Mobility, LLC</u>, 499 F.3d 663, 667 (7th Cir. 2007).[4]

After careful review of the parties' arguments, the Court finds that the Plaintiffs have failed to state a claim for the reasons discussed below. Plaintiffs' failure to allege a federal claim in Count I means that the Court should decline to assert supplemental jurisdiction over the remaining state law claims. <u>See</u> 28 U.S.C. § 1367(c)(3); <u>Burritt v. Ditlefsen</u>, 807 F.3d 239, 252 (7th Cir. 2015).

Plaintiffs also fail to allege the citizenship of Plaintiffs Robert and Patricia Fugate, and so, fail to allege diversity jurisdiction.  Assuming the Plaintiffs can rectify this omission and allege diversity jurisdiction, the Plaintiffs should be given leave to replead their state law claims in Counts II through V.

The Plaintiffs should be required in any amended complaint to set forth clearly the amounts of money that St. John's and Drs. McDaniel, Banday, and Byrnes have agreed to pay to settle the Fugate Litigation.

---

[4] The Court directed the parties to address whether Plaintiffs alleged standing. <u>Opinion entered January 13, 2016 (d/e 40) (Opinion 40)</u>. The Court must raise questions of subject matter jurisdiction <u>sua sponte</u> when the Court identifies such issues. <u>See</u> e.g., <u>Joyce v. Joyce</u>, 975 F.2d 379, 386 (7th Cir. 1992).  The Complaint alleges that the Defendants have become liable for actual and punitive damages.  St. John's agreed to pay an undisclosed amount in settlement of the claims against it in the Fugate Litigation.  They allege that they have been injured because of the Defendants' alleged wrongful conduct in denying the Plaintiffs' $2,000,000.00 in insurance coverage for these losses. These allegations are sufficient to show an injury in fact.  <u>See</u> <u>Sierra Club v. Franklin County Power of Illinois</u>, LLC, 546 F.3d 918, 925 (7th Cir. 2008) (An injury-in-fact need only be an "identifiable trifle.").  The Defendants do not question the Plaintiffs' constitutional standing. <u>See</u> <u>Defendants' Responses to Opinion 40 (d/e 41, 42, and 43)</u>.

Rule 8 requires the Plaintiffs to allege facts that give Defendants adequate notice of these claims.  Fed. R. Civ. P. 8(a); <u>Independent Trust Corp.</u>, 665 F.3d at 934-35.  The Fugate Dismissal Order and the Assignment Agreements show that St. John's and Drs. McDaniel, Banday, and Byrnes have settled.  The Plaintiffs must allege the amounts of these settlements in order to give the Defendants fair notice of the claims.  If Plaintiffs are concerned about maintaining the confidentiality of the settlements, they can seek permission to file the information under seal.

The Court addresses each claim separately below.

I.    <u>Count I RICO</u>

Count I attempts to allege a violation of RICO.  To state a claim for a RICO violation, a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  <u>Gamboa v. Velez</u>, 457 F.3d 703, 705 (7th Cir. 2008).  To allege racketeering activity, the Plaintiffs must allege that the Defendant engaged in criminal activity listed in the RICO statute.  18 U.S.C. § 1961 (1) (A).  The Plaintiffs must also allege facts that show that the Defendants' pattern of such activity "amount to or pose a threat of continued criminal activity."  <u>Gamboa</u>, 457 F.3d at 705 (quoting <u>Corley v. Rosewood Care Ctr., Inc. of Peoria</u>, 388 F.3d 990, 1002 (7th Cir. 2004).  Allegations of isolated instances of criminal behavior that do not

pose a threat of future harm are not sufficient to allege a pattern of racketeering activity.  <u>Gamboa</u>, 457 F.3d at 705.

In this case, the Plaintiffs fail to allege a pattern that poses a threat of continued criminal activity.  The Plaintiffs contend that they have alleged in the Illinois crimes of conspiracy to commit commercial bribery and commercial bribery when the Defendants offered an inducement to Drs. McDaniel, Banday, and Byrnes to agree with the Defendants' interpretation of the Policy.  <u>Plaintiffs' Responses to Motions 54 and 55 (d/e 58 and 59) (collectively Plaintiffs' Response)</u>, at 6.[5]  Even if true, the allegations all concern a single dispute about the coverage of an insurance policy arising from the single personal injury case.  The Plaintiffs do not allege facts that plausibly show any threat of future harm from ongoing racketeering activity.  The Plaintiffs are trying to turn a commercial dispute over insurance coverage of a single medical malpractice case into a RICO case.  That is improper.  <u>See</u> <u>Midwest Grinding Co. v. Spitz</u>, 976 F.2d 1016, 1025 (7th Cir.

---

[5] Conspiracy and commercial bribery punishable by more than a year in prison under state law are predicate criminal acts listed in RICO.  18 U.S.C. § 1961(1)(A).  Under Illinois law, "a person commits commercial bribery when he confers, or offers or agrees to confer, any benefit upon any employee, agent or fiduciary without the consent of the latter's employer or principal, with the intent to influence his conduct in relation to his principal's affairs."  720 ILCS 5/29A-1.  A person commits the crime of conspiracy when he agrees with another to commit that offense, and one of the co-conspirators commits an act in furtherance of the agreement.  720 ILCS 5/8-2(a).

The Plaintiffs allege that the Defendants offered an inducement to Drs. McDaniel, Banday, and Byrnes to agree with the Defendants' interpretation of the Policy.  The Plaintiffs further allege that Drs. McDaniel, Banday, and Byrnes were employees or agents of St. John's.  The offering of the inducement could have plausibly constituted commercial bribery.  The agreement of the Defendants to offer the inducement, combined with the alleged offer of the inducement, could have plausibly constituted conspiracy.

1992) ("RICO has not federalized every state common-law cause of action available to remedy business deals gone sour.").  The Plaintiffs fail to allege a pattern of racketeering.  Count I fails to state a claim.

The Plaintiffs argue that the Complaint alleges a threat of future harm.  The Court disagrees.  The Plaintiffs argue that the Complaint alleges that the "Defendants will continue to assume the position that only $1 million-aggregate coverage is available for instances of professional liability, regardless of the number of personnel involved . . . ."  Plaintiffs' Response, at 7.  The Plaintiffs' allegations of future conduct are conclusory at best.  Such conclusory allegations are not sufficient to state a claim.  See Iqbal, 556 U.S. at 678 ("mere conclusory statements" are insufficient to state a claim).  Moreover, the Defendants' assertion of their alleged interpretation of the Policy and related agreements was not racketeering activity.  The alleged racketeering activity was the conspiracy to commit commercial bribery of Drs. McDaniel, Banday, and Byrnes.  The alleged bribery conspiracy only related to the Fugate Litigation.  The Complaint does not allege a risk of an ongoing bribery conspiracy.  The Complaint fails to allege a pattern of racketeering activity necessary to state a RICO claim.  Count I fails to state a claim.

## II.   Count II Fraud

Count II fails to allege fraud with sufficient specificity.  Fraud must be plead with specificity.  Fed. R. Civ. P. 9(b).  The Plaintiffs must allege the content of the misrepresentations, the persons who made the misrepresentations, the time that the person made the misrepresentations, and the method that the misrepresentation was communicated to the Plaintiff.   U.S. ex rel. Grenadyor v. Ukrainian Village Pharmacy, Inc., 772 F.3d 1102, 1106 (7th Cir. 2014).  The Plaintiffs only allege "That at all times herein mentioned, the various defendants did in fact represent to the plaintiff that at all necessary times the three defendants-doctors each had $1,000,000 in individual coverage, for an aggregate amount of $3,000,000 available for potential satisfaction of the Fugate lawsuit."  Complaint, ¶ 31.  This general allegation is not sufficient for Rule 9.  Plaintiffs' arguments to the contrary are not persuasive.  Count II fails to state a claim.  Should the Plaintiffs replead Count II, they must meet the pleading requirements of Rule 9(b).

## III.   Count III Civil Conspiracy

To allege a civil conspiracy, the Plaintiffs must allege that the Defendants agreed to commit an unlawful act or a lawful act through unlawful means.  Buckner v. Atlantic Plant Maintenance, Inc., 182 Ill.2d 12,

23-24, 694 N.E.2d 565, 571 (Ill. 1998).  The Plaintiffs allege that the Defendants conspired to cause the breach of the Agreement, the Policy and the "bylaw coverage agreements" by unlawful means.[6]  Complaint ¶ 38.  The Plaintiffs allege Defendants used unlawful means when they "did overtly acquiesce in the position that all doctors share $1,000,000.00 in insurance coverage, each acquiescence constituting a tortious act."  Complaint ¶ 39.  Pleading the bare legal conclusion of, "each acquiescence constituting a tortious act," is insufficient.  Plaintiffs must plead some facts that plausibly show that the Defendants' acquiescence was somehow tortious.  See Iqbal, 556 U.S. at 678.  Count III fails to state a claim as plead.[7]

IV.   Count IV Breaches of Contracts

Count IV attempts to allege Drs. McDaniel, Banday, and Byrnes's assigned claims against National Guardian for breach of the Policy, and St. John's claim of breach of contract against Emergency Physician's breach of the Agreement.  To state a claim for breach of contract, a plaintiff must allege the existence of a contract, performance by the plaintiff, breach by the defendant, and damages.  E.g., Catania v. Local 4250/5050 of

---

[6] The Complaint does not define the term "bylaw coverage agreements."  The Court infers that the term means the Hospital's Medical Staff Bylaws.
[7] The Defendants also argue that Plaintiffs must meet Illinois state law pleading requirements for pleading a conspiracy claim.  State law pleading requirements do not apply in federal court.  See Fed. R. Civ. P. 1.

Communications Workers of America, 359 Ill.App.3d 718, 724, 834 N.E.2d
966, 971 (Ill.App. 1st Dist. 2005).  Count IV alleges:

(1) That Drs. McDaniel, Banday, and Byrnes were Additional Named
Insureds under the Policy; that the Policy called for $1,000,000.00
each for the three doctors for a total of $3,000,000.00 in coverage
for the Fugate Litigation; that they performed their duties as ER
Physicians; that Drs. McDaniel, Banday, and Byrnes performed
their obligations under the Policy; that the National Guardian
breached the Policy by stating that it would only provide a total
$1,000,000.00 coverage for the Fugate Litigation; and damages;
and

(2) That St. John's performed its obligations under the Agreement;
that Emergency Physicians' agreed to provide insurance coverage
of $1,000,000.00 per occurrence for each of Drs. McDaniel,
Banday, and Byrnes under the terms of the Agreement; that
Emergency Physicians breached by stating that it only provided a
total $1,000,000.00 coverage for all three Doctors for the Fugate
Litigation; and damages.

The meaning of a written contract can be determined by the Court as
a matter of law unless the relevant contract provisions are ambiguous.  The

Court construes the contract to give effect to the parties' intent.  The plain meaning of the contract provisions is the best indication of the parties' intent.  See Gallagher v. Lenart, 226 Ill.2d 208, 219, 874 N.E.2d 43, 48 (Ill. 2007); Rakowski v. Lucente, 104 Ill.2d 317, 323, 472 N.E.2d 791, 794 (Ill. 1984).

    A. Breach of the Policy

    In this case, the Policy provided $1,000,000.00 of separate coverage limit for each Additional Named Insured per occurrence.  The Per Occurrence Limit of Liability provision, quoted above, stated that "The Per Occurrence Limit of Liability listed in the Declarations shall apply separately to each Additional Named Insured."   Policy, § III.A (emphasis added). Pursuant to this provision in the Policy, each Additional Named Insured has a separate Per Occurrence Limit of Liability of $1,000,000.00 for each Occurrence, up to the annual aggregate of $3,000,000.000.  Drs. McDaniel, Banday, and Byrnes were Additional Named Insureds.  Therefore, each had a separate Per Occurrence Limit of Liability of $1,000,000.00, for a total of $3,000,000.00 per occurrence for the Fugate Litigation.

    The $3,000,000.00 of coverage for Drs. McDaniel, Banday, and Byrnes was subject to the Annual Aggregate of $3,000,000.00 and also subject to any damages assessed against the Named Insured, Emergency

Physicians, in the Fugate Litigation.  The Policy addresses a situation such as the Fugate Litigation in which a suit is brought against Named Insured (Emergency Physicians) and Additional Named Insureds (Drs. McDaniel, Banday, and Byrnes),

> In the event that a claim is made or <u>Suit</u> is brought against more than one <u>Additional Named Insured</u> as well as the <u>Named Insured</u> . . . , the <u>Named Insured</u> . . . will share in the Per Occurrence Limits applicable to the <u>Additional Named Insureds</u> and any <u>Damages</u> assessed against the <u>Named Insured</u> . . . shall be apportioned equally to each <u>Additional Named Insured's</u> Per Occurrence Limit of Liability.

Policy, § III.A (emphasis in the original).  Therefore, in this situation, the Policy states that any damages assessed against Emergency Physicians will be apportioned equally to each separate $1,000,000.00 Per Occurrence Limit that the Policy provided for the three Additional Named Insureds, Drs. McDaniel, Banday, and Byrnes.  The Policy states that the total amount of coverage is subject to the Annual Aggregate of $3,000,000.00.

National Guardian has stated that it will only provide a total of $1,000,000.00 in coverage for all Defendants.  National Guardian's position clearly violates § III.A. of the Policy.  National Guardian's refusal to comply with the terms of the Policy could plausibly constitute a breach of the Policy.  A party's unequivocal and unjustified assertion that it will not

perform its contractual obligations at the time of performance may constitute a breach.  See Busse v. Paul Revere Life Ins. Co., 341 Ill.App.3d 589, 594, 793 N.E.2d 779, 783 (Ill. App. 1st Dist. 2003) ("[A]lthough a party may state that it intends to honor its obligations, it may still repudiate the contract by insisting that it is obligated to perform only according to its incorrect interpretation of the contract's terms.") (quoting Farnsworth on Contracts § 8.21, at 535).  The measure of damages for repudiation of a contract "is the amount of money that will place the injured party in as satisfactory a position as he or she would have been in had the contract been performed."  Busse, 793 N.E.2d at 784.

The Plaintiffs, however, fail to give the Defendants fair notice of the alleged damages from the alleged breach.  The Plaintiffs' damages allegations are inconsistent.  The Complaint at paragraphs 47 and 54 alleges that the Plaintiffs have become liable for actual damages in the Fugate Litigation, and at paragraph 36 alleges that St. John's has been held "vicariously liable and subject to a satisfaction of judgment by Patricia and Robert Fugate in excess of the claimed $1,000,000 aggregate coverage."[8]  The Assignment Agreements and the Fugate Dismissal Order, however, do not indicate that any damages have been awarded in the

---

[8] The Complaint also alleges that the Plaintiffs have become liable for punitive damages.  Punitive damages are not included within the Policy's definition of damages and so are not covered by the Policy. See Policy, § IV.B.

Fugate Litigation.  The Assignment Agreements state that Plaintiffs Robert and Patricia Fugate and St. John's have released claims against Drs. McDaniel, Banday, and Byrnes.  The Fugate Dismissal Order dismissed the claims against St. John's pursuant to a settlement.  These inconsistencies do not give the Defendants fair notice of the alleged injury, as required by Rule 8.

St. John's may have incurred damages in connection with the amount it paid in settlement to the Fugates.  If so, then the damages would be the amount that National Guardian would have been obligated to pay to cover St. John's settlement with the Fugates up to $3,000,000.00 in coverage. Drs. McDaniel, Banday, and Byrnes may have also incurred damages if they paid or agreed to pay the Fugates and St. John's a sum in excess of $1,000,000.00 as part of the consideration for the releases in Assignment Agreements.  The Complaint, however, does not allege any facts regarding amounts paid in connection with either the settlement between the Fugates and St. John's or the Assignment Agreements.  The Complaint, therefore, fails to give the Defendants fair notice of the damages incurred.

As a result of the Plaintiffs' insufficient damages allegations, the Plaintiffs have failed to state a claim for breach of contract.  Plaintiffs should be given an opportunity to rectify this deficiency in the Complaint.

Any amended pleading should allege facts that give the Defendants fair notice of the amount of money that St. John's and Drs. McDaniel, Banday, and Byrnes paid or agreed to pay in settlement.

National Guardian argues that Plaintiffs cannot prove that they could ever suffer any loss in the Fugate Litigation that would have been covered by the Policy. National Guardian argues that no covered loss can arise until a judgment has been entered, and no judgment will ever be entered against St. John's, Dr. McDaniel, Dr. Banday, or Dr. Byrnes because they have settled the claims against them. The Court disagrees. The Policy states that National Guardian will pay damages that an insured is legally obligated to pay as a result of a covered occurrence. Policy, § I. The Policy defines damages to include the "monetary portion of . . . any settlement." Policy, § IV.B (emphasis added). A settlement agreement may constitute a legal obligation to pay for purposes of a liability insurance policy, particularly if the insurer has breached his obligations under the Policy. See Guillen ex rel. Guillen v. Potomac Ins. Co. of Illinois, 203 Ill.2d 141, 158-61, 785 N.E.2d 1, 12 (Ill. 2003). If the Plaintiffs can prove that National Guardian repudiated its duties under the Policy, then the money that St. John's and Drs. McDaniel, Banday, and Byrnes have paid or

agreed to pay in settlement could plausibly be damages covered by the Policy.

The fact that Drs. McDaniel, Banday, and Byrnes assigned their rights would not negate National Guardian's underlying obligation to pay. Guillen, 785 N.E.2d at 12. If the Plaintiffs can allege facts that give fair notice of the amount of money that St. John's and Drs. McDaniel, Banday, and Byrnes paid or agreed to pay in settlement, the Plaintiffs may state a claim for breach of the Policy.

    B. Breach of the Agreement

St. John's does not state a claim against Emergency Physicians for breach of the Agreement. Emergency Physicians agreed under the Agreement to provide $1,000,000.00 of coverage per occurrence for its ER Physicians with a $3,000,000.00 aggregate. Emergency Physicians purchased the Policy and listed Drs. McDaniel, Banday, and Byrnes as Named Additional Insureds. As explained above, the Policy provided a separate per occurrence limit of $1,000,000.00 for each Additional Named Insured with an annual aggregate of $3,000,000.00. Emergency Physicians thereby performed its obligation under the Agreement. Emergency Physician's subsequent position regarding the meaning of the Agreement and the Policy do not change the meaning of either.

Emergency Physicians performed its obligations to provide insurance for the ER Physicians under the Agreement.[9]

V.    Count V Breach of Fiduciary Duty

Count V is a breach of fiduciary duty claim assigned by Drs. McDaniel, Banday, and Byrnes.  To state a claim for breach of fiduciary duty, the plaintiff must allege that the defendant owed a fiduciary duty to the plaintiff, the defendant breached the fiduciary duty, and the breach proximally caused the injury to the plaintiff.  Neade v. Portes, 193 Ill.2d 433, 444, 739 N.E.2d 496, 502-03 (Ill. 2000).

In this case, the Plaintiffs allege that Emergency Physicians had a fiduciary relationship with Drs. McDaniel, Banday, and Byrnes because they were partners.  Partners owe a fiduciary duty to each other with respect to the purpose of the partnership.  Each partner must "exercise the utmost good faith and honesty in all dealings and transactions relating to the partnership."  Couri v. Couri, 95 Ill.2d 91, 98, 447 N.E.2d 334, 337 (Ill. 1983) (citations omitted).  A managing partner, such as Emergency Physicians also owes "a duty, as trustee, to maintain regular and accurate records and to account for partnership transactions."  Id. (citations omitted).

---

[9] The Court does not reach Emergency Physicians' affirmative defense of the statute of limitations because St. John's fails to state a claim.  See Patel v. INS, 811 F.2d 377, 380 (7th Cir. 1987) ("As a general rule, courts . . . are not required to make findings on issues the decision of which is unnecessary to the result . . . .") (quoting INS v. Bagamasbad, 429 U.S. 24, 25-26 (1976)).

Emergency Physicians agreed to secure $1,000,000.00 of insurance coverage per occurrence to each of Drs. McDaniel, Banday, and Byrnes. Emergency Physicians purchased the Policy, and the Policy provided coverage of $1,000,000.00 each per occurrence to Drs. McDaniel, Banday, and Byrnes. Emergency Physicians did not breach its fiduciary duty by purchasing the Policy.

Emergency Physicians also allegedly cooperated with the other Defendants to take the position that the Policy provided a total of $1,000,000.00 in coverage for Drs. McDaniel, Banday, and Byrnes in the Fugate Litigation rather than $1,000,000.00 each. Emergency Physicians' decision to cooperate with the Defendants to misread the terms of the Policy to limit available insurance coverage could plausibly constitute a breach of Emergency Physicians' fiduciary duty to exercise utmost good faith and honesty. The Plaintiffs, however, fail to plead facts that give fair notice of the injury suffered, if any, by Drs. McDaniel, Banday, and Byrnes as a result of the breach. The Plaintiffs should be given leave to replead facts that give fair notice of the loss. The Court notes that the Plaintiffs also seek punitive damages for breach of a fiduciary duty. Punitive damages may be available for breaches of fiduciary duty in appropriate

circumstances.  See In re Estate of Wernick, 127 Ill.2d 61, 85, 535 N.E.2d 876, 887 (Ill. 1989).

THEREFORE THIS COURT RECOMMENDS that the Defendant National Guardian Risk Retention Group, Inc. Motion to Dismiss Plaintiffs' Second Amended Complaint (d/e 55); and Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint (d/e 53) should be ALLOWED in part.  Count I of the Second Amended Complaint should be dismissed with prejudice, and Counts II through V should be dismissed with leave to replead.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file a timely objection will constitute a waiver of objections on appeal.  See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986).  See Local Rule 72.2.

ENTER:   June 1, 2016

_____ s/ Tom Schanzle-Haskins_____
UNITED STATES MAGISTRATE JUDGE