IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ST. JOHN'S HOSPITAL OF THE<br>HOSPITAL SISTERS OF THE THIRD<br>ORDER OF ST. FRANCIS,<br>PATRICIA FUGATE, and<br>ROBERT FUGATE, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 15-cv-3292-SEM-TSH |
| NATIONAL GUARDIAN RISK RETENTION<br>GROUP, INC., EMERGENCY<br>CONSULTANTS, INC., CENTRAL<br>ILLINOIS EMERGENCY PHYSICIANS,<br>P.C., a/k/a CENTRAL ILLINOIS<br>EMERGENCY PHYSICIANS, LLP,<br>JAMES M. JOHNSON, M.D.,<br>ROBERT M. WILLIAMS, M.D., and<br>DERIK K. KING, M.D., | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

### THIRD AMENDED COMPLAINT

### JURISDICTION

1)    The Court's jurisdiction lies pursuant to 28 U.S.C. § 1332 in that no plaintiff is from the same state as any defendant, and the amount in controversy exceeds $75,000, exclusive of costs and interest.

### PARTIES

2)    Plaintiff St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis is a citizen of Illinois, a not-for-profit corporation, authorized to do business in the State of Illinois, and the operator of a certain hospital in

Springfield, Illinois.

3)    Plaintiff Patricia Fugate is a citizen of Illinois.

4)    Plaintiff Robert Fugate is a citizen of Illinois.

5)    That Doctors John Byrnes, Aamir Banday, and Elizabeth McDaniel have assigned their interests in causes of action arising from: the Agreement for Emergency Department Management Services (attached to the instant Complaint as Exhibit A); St. John's Hospital's Medical Staff Bylaws; the Medical Staff Recredentialing Application, Attestation, Agreement and Release; and the National Guardian Risk Retention Group, Inc. Policy number PL 1021 (attached to the instant Complaint as Exhibit B). Doctors John Byrnes, Aamir Banday, and Elizabeth McDaniel have assigned those claims to Plaintiffs St. John's Hospital, Patricia Fugate, and Robert Fugate.  These Assignment Agreements are attached to the instant Complaint as Group Exhibit C.

6)    Defendant National Guardian Risk Retention Group, Inc., is a citizen of Hawaii and Michigan as a Hawaii corporation with its principal place of business in Traverse City, Michigan.  They are in the business of writing liability and other types of insurance.

7)    Defendant Emergency Consultants, Inc., is a citizen of Michigan as a Michigan corporation with its principal place of business in Traverse City, Michigan.  They are in the business of generating and overseeing a network of physician groups, and they

hold themselves out as the representative, actual agent, implied agent, apparent agent and/or employee of co-defendant National Guardian.

8)   Defendant Central Illinois Emergency Physicians, P.C., a/k/a Central Illinois Emergency Physicians, LLP, is a limited liability partnership with its principal place of business in Traverse City, Michigan.  The Central Illinois Emergency Physicians limited liability partnership is comprised of two partners: Robert M. Williams and James M. Johnson, both of whom are citizens of Michigan.  As such, the LLP is a citizen of Michigan.  At all times relevant to this Complaint, they provided physician services to Illinois medical facilities, including plaintiff St. John's Hospital.

9)   Defendant James M. Johnson, M.D., is a medical doctor, licensed to practice in Michigan and a citizen and resident of Michigan; he was a founder of Emergency Consultants, Inc., and at various times relevant to this action has served as Managing Partner of Central Illinois Emergency Physicians, as well as the Chief Executive Officer of National Guardian Risk Retention Group, Inc.

10)  Defendant Robert M. Williams, M.D., is a medical doctor, licensed to practice in Michigan and a citizen and resident of Michigan; he was a founder of Emergency Consultants, Inc., and at all times relevant to this action has served as

Case No. 15-cv-3292

their Chairman of the Board.

11)  Defendant Derik K. King, M.D., is a medical doctor, licensed to practice in Virginia and a citizen and resident of Virginia; since 2007, he has served as the President and Chief Executive Officer of Emergency Consultants, Inc.

12)  Emergency Consultants, Inc., Central Illinois Emergency Physicians, and National Guardian Risk Retention Group, Inc. are interrelated.

### FACTS

13)  On March 22, 2011, Patricia and Robert Fugate filed a medical malpractice complaint in Madison County, IL, 11-L-270, alleging negligence against several defendants, including St. John's Hospital, Emergency Consultants, Inc., and three doctors affiliated with Emergency Consultants: Elizabeth McDaniel, D.O.; Aamir Banday, M.D.; and John Byrnes, M.D.

14)  At all times relevant to the underlying medical malpractice case, namely May 3, 4, and 11 of 2009, Drs. McDaniel, Banday and Byrnes were agents and/or employees of St. John's Hospital.

15)  During this relevant time period, there was in effect an Agreement for Emergency Department Management Services between St. John's Hospital and Central Illinois Emergency Physicians which provided, *inter alia*, as follows:

> "**Liability Insurance**. Partnership, at no cost to

Hospital, shall ensure that personnel provided by
it shall maintain professional liability insurance
coverage (primary and excess) in an amount not
less than $2,000,000 per occurrence and $4,000,000
annual aggregate (only $1,000,000 per occurrence
and $3,000,000 annual aggregate will be provided
until 11/1/01, at which time the full coverage
will commence), subject to the terms and
conditions of the individual policies.

(Exhibit A, ¶ 9).

16)  This paragraph was subsequently amended to require
professional liability insurance coverage (primary and excess) in
an amount not less than $1,000,000 per occurrence and $3,000,000
annual aggregate.

17)  For purposes of the instant action, "personnel
provided" (as used in paragraph 9 of the Agreement) includes Drs.
McDaniel, Banday and Byrnes.

18)  At all relevant times, St. John's Hospital Medical
Staff Bylaws required all medical staff to have professional
liability insurance in the amount of $1,000,000 per occurrence
and $3,000,000 annual aggregate; this requirement applied to each
individual staff member.

19)  On November 1, 2004, Central Illinois Emergency
Physicians and St. John's Hospital executed an Amendment to
Agreement for Emergency Department Management Services, paragraph
9 of which provided that St. John's Hospital agreed to pay any
incremental increases in the professional liability insurance
during the term of the Agreement and that Central Illinois

Case No. 15-cv-3292

Emergency Physicians would invoice St. John's Hospital for any incremental increases.

20)  On April 7, 2008, Doctor McDaniel executed a Medical Staff Recredentialing Application, Attestation, Agreement and Release wherein she covenanted to abide by this requirement; Doctor Banday executed same on April 4, 2008, and Doctor Byrnes executed same on April 8, 2008.

21)  Doctors McDaniel, Banday, and Byrnes each submitted Certificates of Insurance to St. John's Hospital, reflecting that they were additional insureds covered by a policy issued by National Guardian to Central Illinois Emergency Physicians which provides coverage in the amount of $1,000,000 per occurrence and $3,000,000 annual aggregate.

22)  The number for this specific policy is PL1021 ("The Policy"), and it was in effect from January 1, 2009 to January 1, 2010 (attached to the instant Complaint as Exhibit B).

23)  The Policy defines an "Additional Named Insured" as "a physician or physician extender, employee, physician partner or independent contractor physician or physician extender specifically listed as an Additional Named Insured in the schedule of Additional Named Insureds" and Drs. McDaniel, Banday, and Byrnes were Additional Named Insureds.

24)  The per occurrence limit of liability listed in the Policy declarations applied separately to each Additional Named

Insured, so each Additional Named Insured had a separate per occurrence limit of liability of $1,000,000 for each occurrence, up to the annual aggregate of $3,000,000.

25)  Central Illinois Emergency Physicians entered into separate "Physician Partnership Agreement"s with Drs. McDaniel, Banday, and Byrnes; each Agreement between Central Illinois Emergency Physicians and each individual doctor stated, at paragraph 11, that Central Illinois Emergency Physicians agreed to provide each doctor with professional liability insurance through National Guardian Risk Retention Group which would provide coverage with limits of $1,000,000 per occurrence and $3,000,000 annual aggregate; the Physician Partnership Agreements, paragraphs 11 in particular, do not reference 'shared limits.'

26) Defendants National Guardian, Emergency Consultants, and Central Illinois Emergency Physicians have taken the position that the applicable coverage to the underlying Fugate litigation is the shared amount of $1,000,000 rather than $1,000,000 per individual defendant physician.

27) National Guardian, Emergency Consultants, Central Illinois Physicians, Dr. Johnson, Dr. Williams, and Dr. King each agreed to deny the hospital its full insurance coverage and in furtherance of that position each affirmatively took the position that only $1 million in coverage applied to the Fugate case.

Case No. 15-cv-3292

28) This position is contrary to the plain language of both the Insurance Policy and Services Agreement described above, both of which were signed by Defendant Dr. Johnson.

29) Doctors McDaniel, Banday and Byrnes, through their counsel, have joined in St. John's position that each doctor is entitled to $1,000,000 in individual coverage, and that the three do not share $1,000,000 in coverage.

30) St. John's Hospital was forced to litigate the underlying Fugate case and negotiate settlement without the benefit of the full $3,000,000 coverage.

31) Doctors McDaniel, Banday and Byrnes were forced to litigate the underlying Fugate case and negotiate settlement without the benefit of the full $1,000,000 per doctor coverage.

32) St. John's Hospital settled the underlying Fugate case for an amount to be disclosed in attached sealed Exhibit D.

33) Plaintiffs have been damaged by Defendants' actions as described in attached sealed Exhibit D.

### COUNT I - FRAUD
All Plaintiffs as against All Defendants

34) Plaintiffs adopt and incorporate paragraphs 1 through and including 33 herein.

35) That Defendants represented to Plaintiffs that Plaintiffs would have $1,000,000 coverage per doctor per medical malpractice occurrence with a $3,000,000 limit annual coverage in

medical malpractice insurance for Drs. McDaniel, Banday and Byrnes; in particular as follows.

36) That on January 18, 2002, Defendant James M. Johnson, M.D., in his capacity of Managing Partner for Defendant Central Illinois Emergency Physicians, LLP, signed a contract promising St. John's Hospital that Central Illinois Emergency Physicians, LLP would ensure any personnel that Central Illinois Emergency Physicians provided would have coverage of at least $1,000,000 per occurrence and annual liability coverage of at least $3,000,000. Richard Carlson Executive Vice-President and CEO of St. John's Hospital also signed that contract, acknowledging, *inter alia,* Central Illinois Emergency Physicians' representation that provided personnel would be covered by at least $1,000,000 per occurrence with a minimum annual liability coverage limit of $3,000,000.

37) That in September of 2002, Defendant James M. Johnson, M.D., in his capacity as Managing Partner for Central Illinois Emergency Physicians, LLP signed a Physician Partnership Agreement contract with each of Drs. McDaniel, Banday and Byrnes, separately and individually, in which each individual contract stated at paragraph 11 that each individual doctor would receive through National Guardian Risk Retention Group, Inc. professional liability insurance coverage with $1,000,000 per occurrence limit and $3,000,000 annual aggregate(see Physician Partnership

Agreement attached as Exhibit E).

38)   That on November 11, 2004, Defendant James M. Johnson, M.D., in his capacity as Managing Partner for Central Illinois Emergency Physicians, LLP signed an Amendment to Agreement for Emergency Department Management Services contract with St. John's Hospital wherein the hospital agreed to pay Central Illinois Emergency Physicians for any incremental increases in professional liability insurance for provided personnel and Central Illinois Emergency Physicians agreed to ensure that personnel provided by it to St. John's Hospital shall maintain professional liability insurance coverage in an amount not less than $1,000,000 per occurrence with $3,000,000 annual aggregate (see Amendment to Agreement for Emergency Department Management Services attached as Exhibit F)

39)   That on January 1, 2009, Defendant James M. Johnson, M.D., in his capacity as Chief Executive Officer for Defendant National Guardian Risk Retention Group, Inc. signed an endorsement to Policy Number PL 1021 certifying that Central Illinois Emergency Physicians, LLP was insured under a policy which provided $1,000,000 in coverage per additional-named-insured doctor per occurrence, with an annual liability coverage limit of $3,000,000.

40)   That on January 1, 2009, Defendant James M. Johnson, M.D., in his capacity as Chief Executive Officer for Defendant

National Guardian Risk Retention Group, Inc. signed an endorsement to Policy Number PL 1021 certifying that Elizabeth McDaniel, D.O.; Aamir Banday, M.D.; and John Byrnes, M.D. were additional-named-insured doctors and were insured under a policy which provided $1,000,000 in coverage per doctor per occurrence, with an annual liability coverage limit of $3,000,000.

41)   That under section 3A of the Policy, the per occurrence limit of liability listed in the Policy declarations applied separately to each Additional Named Insured, so each Additional Named Insured had a separate per occurrence limit of liability of $1,000,000 for each occurrence, up to the annual aggregate of $3,000,000.

42)   That Defendants' representations to Plaintiffs were knowingly false representations of material fact and were made in a scheme to induce Plaintiff to pay for services from physicians of Central Illinois Emergency Physicians, LLP as-covered by National Guardian Risk Retention Group, Inc. and were made to induce Drs. McDaniel, Banday and Byrnes to practice at St. John's Hospital under the impression they were satisfying their obligations to St. John's to practice with individual coverage of at least $1,000,000.

43)   Plaintiffs justifiably relied on Defendants' false representations that each Central Illinois Emergency Physicians doctor had individual malpractice coverage of $1,000,000, as Drs.

McDaniel, Banday and Byrnes performed services as Central Illinois Emergency Physicians personnel for St. John's Hospital, each believing he or she was individually covered by a medical malpractice $1,000,000.

44)  Plaintiffs justifiably relied on Defendants' false representations that each Central Illinois Emergency Physicians doctor had individual malpractice coverage of $1,000,000 with annual aggregate coverage of $3,000,000, as St. John's Hospital credentialed, accorded staff privileges to, and permitted Central Illinois Emergency Physicians personnel – covered by the National Guardian policy – to practice medicine at St. John's Hospital.

45)  That as a direct and proximate result of Plaintiffs' justifiable reliance on Defendants' fraudulent misrepresentations, Plaintiffs have been damaged as they were forced to litigate the underlying Fugate case and negotiate settlement without the benefit of the promised $1,000,000 per doctor/$3,000,000 aggregate coverage.  Plaintiffs' damage is detailed in the attached sealed exhibit.

WHEREFORE, Plaintiffs seeks judgment against Defendants for damages, costs, punitive damages, and any other equitable or legal remedies authorized by law.

### COUNT II - CONSPIRACY
All Plaintiffs as against All defendants

46) Plaintiffs adopt and incorporate paragraphs 1 through

Case No. 15-cv-3292

and including 45 herein.

47)  All named Defendants did conspire and entered into an agreement to accomplish an unlawful purpose – to breach both the insurance and bylaw coverage agreements and to defraud Plaintiffs; agreeing to represent that each Central Illinois Emergency Physicians doctor would have individual malpractice coverage of $1,000,000 with annual aggregate coverage of $3,000,000, in a scheme to induce Plaintiffs to serve and to pay for services from physicians of Central Illinois Emergency Physicians, LLP as-covered by National Guardian Risk Retention Group, Inc. as-detailed in Count I.

48)  Defendants entered into the agreement on or before January 1, 2009, as that was the date that Defendant James M. Johnson, M.D., in his capacity as Chief Executive Officer for Defendant National Guardian Risk Retention Group, Inc. signed an endorsement to Policy Number PL 1021 certifying that Elizabeth McDaniel, D.O.; Aamir Banday, M.D.; and John Byrnes, M.D. were additional-named-insured doctors and were insured under a policy which provided $1,000,000 in coverage per doctor per occurrence, with an annual liability coverage limit of $3,000,000.

49)  Each named defendant knowingly participated in the scheme to commit fraud.

50)  In furtherance of their agreement to defraud Plaintiffs by providing illusory coverage, National Guardian, Emergency

Consultants, Central Illinois Physicians, Dr. Johnson, Dr. Williams, and Dr. King each affirmatively denied that Plaintiffs had $1,000,000 in coverage per doctor per occurrence with an annual liability coverage limit of $3,000,000 in the underlying Fugate case, despite the clear language of the agreements and policies and despite Defendants' previous representations.

51)    That as a direct and proximate result of Defendants' agreement to defraud Plaintiffs, Plaintiffs have been damaged as they were forced to litigate the underlying Fugate case and negotiate settlement without the benefit of the promised $1,000,000 per doctor/$3,000,000 aggregate coverage.  Plaintiffs' damage is detailed in the attached sealed exhibit.

WHEREFORE, Plaintiffs seeks judgment against Defendants for damages, costs, and any other equitable or legal remedies authorized by law.

### COUNT III - BREACH OF CONTRACT - AGREEMENT FOR EMERGENCY DEPARTMENT MANAGEMENT SERVICES
St. John's Hospital v. Central Illinois Emergency Physicians

52) Plaintiffs adopt and incorporate paragraphs 1 through and including 51 herein.

53)    That St. John's Hospital was at all times relevant a party to the Agreement for Emergency Department Management Services ("the Agreement") with Defendant Central Illinois Emergency Physicians, LLP.

54)    That the Agreement was a valid contract.

Case No. 15-cv-3292

55)    That Plaintiff performed its obligations under the Agreement.

56)    That the signed Agreement between Central Illinois Emergency Physicians, LLP and St. John's Hospital required Central Illinois Emergency Physicians to ensure that each individual doctor  provided by Central Illinois Emergency Physicians to St. John's Hospital would have $1,000,000 coverage. (See Exhibit A, ¶ 9).

57) That Central Illinois Emergency Physician's obligation under the valid contract was to ensure that each provided doctor had per occurrence coverage of $1,000,000.

58)    That in addition to the $1,000,000 coverage per personnel provided per occurrence, the Agreement required Central Illinois Emergency Physicians to ensure there existed at least $3,000,000 in annual aggregate coverage.

59)    That despite Central Illinois Emergency Physicians, LLP's agreement to ensure that each individual doctor it provided maintained $1,000,000 per occurrence coverage, in the underlying Fugate case, when three provided doctors were named, the policy only provided $1,000,000 total coverage – not the $1,000,000 per doctor as Central Illinois Emergency Physicians was contracted to secure.

60)    That Central Illinois Emergency Physicians, LLP's failure to ensure that personnel provided by it maintained

individual per occurrence coverage of $1,000,000 each constituted a breach of the Agreement.

61)  That as a direct and proximate result of Defendant's breach of contract, Plaintiff has been damaged as they were forced to litigate the underlying Fugate case and negotiate settlement without the benefit of the promised $1,000,000 per doctor/$3,000,000 aggregate coverage.  Plaintiffs' damage is detailed in the attached sealed exhibit.

WHEREFORE, Plaintiffs seeks judgment against Defendants for damages, costs, and any other equitable or legal remedies authorized by law.

### COUNT IV - BREACH OF CONTRACT - NATIONAL GUARDIAN RISK RETENTION GROUP POLICY NO. PL 1021
Plaintiffs v. National Guardian Risk Retention Group, Inc.

62) Plaintiffs adopt and incorporate paragraphs 1 through and including 61 herein.

63)  That doctors Elizabeth McDaniel, Aamir Banday, and John Byrnes have assigned their interests in these causes of action to Plaintiffs St. John's Hospital, Patricia Fugate, and Robert Fugate.

64) That Doctors McDaniel, Banday, and Byrnes were at all times relevant Additional Named Insureds on the National Guardian Risk Retention Group, Inc. Policy, policy number PL 1021 ("the Policy").

65)  That the Policy was a valid contract.

Case No. 15-cv-3292

66)   That Plaintiffs and their assignors performed their obligations under the Policy.

67)   That under the Policy National Guardian Risk Retention Group, Inc. was obligated to provide $1,000,000 in coverage per Additional Named Insured doctor per occurrence, with an annual liability coverage limit of $3,000,000.  Per Section 3A in particular, the per occurrence limit of liability listed in the Policy declarations applied separately to each Additional Named Insured, so each Additional Named Insured had a separate per occurrence limit of liability of $1,000,000 for each occurrence, up to the annual aggregate of $3,000,000.

68)   That in the underlying Fugate case, and despite National Guardian Risk Retention Group, Inc.'s obligation under the Policy, National Guardian Risk Retention Group, Inc. refused to cover each Additional Named Insured at $1,000,000 each and refused to provide $3,000,000 in aggregate coverage in clear violation of Section 3A of the policy.

69)   That National Guardian Risk Retention Group, Inc.'s failure to abide by the Policy and provide $1,000,000 coverage per doctor with $3,000,000 in aggregate annual coverage constituted a breach of the Policy.

70)   That as a direct and proximate result of Defendant's breach of contract, Plaintiffs have been damaged as they were forced to litigate the underlying Fugate case and negotiate

Case No. 15-cv-3292

settlement without the benefit of the promised $1,000,000 per doctor/$3,000,000 aggregate coverage.  Plaintiffs' damage is detailed in the attached sealed exhibit.

WHEREFORE, Plaintiffs seeks judgment against Defendants for damages, costs, and any other equitable or legal remedies authorized by law.

### COUNT V - BREACH OF FIDUCIARY DUTY
Plaintiffs v. Central Illinois Emergency Physicians

71) Plaintiffs adopt and incorporate paragraphs 1 through and including 70 herein.

72)  That Defendant Central Illinois Emergency Physicians entered into partnership agreements with each of Drs. Elizabeth McDaniel, Aamir Banday, and John Byrnes, to supply professional medical services to medical facilities, benefitting both Central Illinois Emergency Physicians and its individual physician partners; with Central Illinois Emergency Physicians managing and controlling business and affairs, and with the individual physician partners practicing medicine for medical facility customers; and with shared interest in the profits and losses of the partnership between Central Illinois Emergency Physicians and its physician partners.

73) That Central Illinois Emergency Physicians was the managing partner in the partnership with the individual physicians.

Case No. 15-cv-3292

74) That Central Illinois Emergency Physicians represented to its physician partners that it would provide the physician partners with professional liability insurance through National Guardian Risk Retention Group in an amount of $1,000,000 each, per occurrence, with $3,000,000 annual aggregate coverage.

75) By virtue of their partnership, Central Illinois Emergency Physicians owed a fiduciary duty to Doctors McDaniel, Banday, and Byrnes, and owed a specific fiduciary duty to Doctors McDaniel, Banday, and Byrnes to provide professional liability insurance in the coverage amount represented.

76) That the Defendants' position of $1,000,000 total coverage described above is contrary to the partnership agreement, contrary to the representations made by managing partner Central Illinois Emergency Physicians, and constitutes a breach of fiduciary duty.

77) That as a direct and proximate result of Defendant's breach of fiduciary duty, Plaintiffs have been damaged as they were forced to litigate the underlying Fugate case and negotiate settlement without the benefit of the promised $1,000,000 per doctor/$3,000,000 aggregate coverage. Plaintiffs' damage is detailed in the attached sealed exhibit.

WHEREFORE, Plaintiffs seeks judgment against Defendants for damages, costs, punitive damages, and any other equitable or legal remedies authorized by law.

Case No. 15-cv-3292

Respectfully submitted:


/s/Thomas Q. Keefe, Jr.
THOMAS Q. KEEFE, JR.
IL REG NO. 03123418
Attorney for Plaintiff


**KEEFE, KEEFE & UNSELL, P.C.**
**#6 Executive Woods Court**
**Belleville, IL  62226**
**618/236-2221 (Telephone)**
**618/236-2194 (Facsimile)**
debbie@tqkeefe.com
isuedocs77@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2016, I electronically
filed:  Plaintiffs' **THIRD AMENDED COMPLAINT** with the Clerk of the
Court using the CM/ECF system which will send notification of
such filing to the following:

Elisha S. Rosenblum - eli.rosenblum@kitch.com
Michael T. Walsh - mike.walsh@kitch.com
Alex E. Campos - acampos@cassiday.com


/s/Thomas Q. Keefe, Jr.
THOMAS Q. KEEFE, JR.
IL REG NO. 03123418
Attorney for Plaintiff


Case No. 15-cv-3292