## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ST. JOHN'S HOSPITAL OF THE HOSPITAL SISTERS OF THE THIRD ORDER OF ST. FRANCIS, PATRICIA FUGATE, and ROBERT FUGATE, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | NO. 15-3292 |
| NATIONAL GUARDIAN RISK RETENTION GROUP, INC., EMERGENCY CONSULTANTS, INC., CENTRAL ILLINOIS EMERGENCY PHYSICIANS, P.C., a/k/a CENTRAL ILLINOIS EMERGENCY PHYSICIANS, LLP, JAMES M. JOHNSON, M.D., ROBERT M. WILLIAMS, M.D., and DERIK K. KING, M.D., | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

This is a diversity of citizenship case.

Plaintiffs assert five state law counts against the Defendants.

Pending are two motions to dismiss filed by the Defendants pursuant to

1

Federal Rule of Civil Procedure 12(b)(6).

At the end of the day, one of the motions is granted in its entirety.

## I.    FACTS

In their Third Amended Complaint, the Plaintiffs state that on March 22, 2011, Plaintiffs Patricia and Robert Fugate filed a medical malpractice complaint in Madison County, IL, 11-L-270, alleging negligence against several Defendants, including St. John's Hospital, Emergency Consultants, Inc., and three doctors affiliated with Emergency Consultants: Elizabeth McDaniel, D.O.; Aamir Banday, M.D.; and John Byrnes, M.D.

At all times relevant to the underlying medical malpractice case, namely on May 3, 4 and 11 of 2009, there was in effect an Agreement for Emergency Department Management Services between St. John's Hospital and Central Illinois Emergency Physicians which provided, *inter alia*, as follows:

> **Liability Insurance.** Partnership, at no cost to Hospital, shall ensure that personnel provided by it shall maintain professional liability insurance coverage (primary and excess) in an amount not less than $2,000,000 per occurrence and $4,000,000 annual aggregate (only $1,000,000 per occurrence and $3,000,000 annual aggregate will be provided until 11/1/01, at which time the full coverage will commence), subject to the terms and conditions of the individual policies.

This paragraph (paragraph 9) was subsequently amended to require professional liability insurance coverage (primary and excess) in an amount not less than $1,000,000 per occurrence and $3,000,000 annual aggregate. The Plaintiffs allege that for purposes of this action, "personnel provided" include Drs. McDaniel, Banday and Byrnes.

All medical staff at St. John's Hospital were required to have professional liability insurance in the amount of $1,000,000 per occurrence and $3,000,000 annual aggregate.

On November 1, 2004, Defendant Central Illinois Emergency Physicians and St. John's Hospital executed an Amendment to Agreement for Emergency Department Services, paragraph 9 of which provided that St. John's Hospital agreed to pay any incremental increases in the professional liability insurance during the term of the Agreement and that Central Illinois Emergency Physicians would invoice St. John's Hospital for any incremental increases.

Drs. McDaniel, Banday and Byrnes each submitted Certificates of Insurance to St. John's Hospital, reflecting that they were additional insureds covered by a policy issued by National Guardian to Central Illinois

Emergency Physicians which provides coverage in the amount of $1,000,000 per occurrence and $3,000,000 annual aggregate. The policy (PL1021) defines an "Additional Named Insured" as "a physician or physician extender, employee, physician partner or independent contractor physician or physician extender specifically listed as Additional Named Insured in the schedule of Additional Named Insureds." Drs. McDaniel, Banday and Byrnes were Additional Named Insureds.

The Plaintiffs allege the per occurrence limit of liability listed in the Policy declarations applied separately to each Additional Named Insured, so each Additional Named Insured had a separate per occurrence limit of liability of $1,000,000 for each occurrence, up to the annual aggregate of $3,000,000.

Central Illinois Emergency Physicians entered into separate "Physician Partnership Agreements" with Drs. McDaniel, Banday and Byrnes. Each Agreement between Central Illinois Emergency Physicians and each individual doctor stated, at paragraph 11, that Central Illinois Emergency Physicians agreed to provide each doctor with professional liability insurance through National Guardian Risk Retention Group which would provide

coverage with limits of $1,000,000 per occurrence and $3,000,000 annual aggregate. The Physician Partnership Agreements, paragraphs 11 in particular, do not reference "shared limits."

The Plaintiffs allege that Defendants National Guardian, Emergency Consultants and Central Illinois Emergency Physicians have taken the position that the applicable coverage to the underlying Fugate litigation is the shared amount of $1,000,000 rather than $1,000,000 per individual Defendant physician. Therefore National Guardian, Emergency Consultants, Central Illinois Emergency Physicians and Defendants Dr. Johnson, Dr. Williams and Dr. King each agreed to deny the hospital its full insurance coverage and, in furtherance of that position, each affirmatively took the position that only $1 million in coverage applied to the Fugate case.

The Plaintiffs claim that the Defendants' position is contrary to the plain language of both the Insurance Policy and Services Agreement, both of which were signed by Defendant Dr. Johnson. Drs. McDaniel, Banday and Byrnes, through their counsel, have joined in St. John's position that each doctor is entitled to $1,000,000 in individual coverage and that the three do not share $1,000,000 in coverage.

St. John's Hospital litigated the underlying Fugate case and negotiated a settlement without the benefit of the full $3,000,000 coverage. Drs. McDaniel, Banday and Byrnes litigated the underlying Fugate case and negotiated a settlement without the benefit of the full $1,000,000 per doctor coverage. St. John's Hospital settled the underlying Fugate case.

Defendants Emergency Consultants, Inc., Central Illinois Emergency Physicians, P.C. a/k/a Central Illinois Emergency Physicians, LLP, James A. Johnson, M.D., Robert M. Williams, M.D. and Derik K. King, M.D. have moved to dismiss the Plaintiffs' Third Amended Complaint.

Defendant National Guardian Risk Retention Group, Inc. has moved to dismiss Counts I, II and IV.

## II.     DISCUSSION

### A. Legal standard

At this stage, the Court accepts as true all of the facts alleged in the complaint and draws all reasonable inferences therefrom. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). "[A] complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief, which is sufficient to provide the defendant with fair notice of the

claim and its basis." *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011)

(internal quotation marks omitted). Courts must consider whether the

complaint states a "plausible" claim for relief. *See id.* The complaint must

do more than assert a right to relief that is "speculative." *See id.* However,

the claim need not be probable: "a well-pleaded complaint may proceed even

if it strikes a savvy judge that actual proof of those facts is improbable, and

that a recovery is very remote and unlikely." *See Independent Trust Corp. v.*

*Stewart Information Services Corp.*, 665 F.3d 930, 935 (7th Cir. 2012)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "To

meet this plausibility standard, the complaint must supply 'enough fact to

raise a reasonable expectation that discovery will reveal evidence' supporting

the plaintiff's allegations." *Id.*

B. Fraud Claims

Count I is a fraud claim asserted by all Plaintiffs against all Defendants.

Rule 9(b) of the Federal Rules of Civil Procedure requires allegations of

fraud to be pled with particularity. *See Cincinnati Life Ins. Co. v. Beyrer*, 722

F.3d 939, 950 (7th Cir. 2013). This means describing the "who, what, when,

where, and how of the fraud." *Id.* (internal quotation marks and citation omitted).

"Illinois does not provide a remedy for fraudulent promises unless the promises are part of a scheme to defraud." *Weeks v. Samsung Heavy Industries Co.*, 126 F.3d 926, 942 (7th Cir. 1997). "[P]romissory fraud is actionable only if it either is particularly egregious or, what may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." *Desnick v. American Broadcasting Cos.*, 44 F.3d 1345, 1354 (7th Cir. 1997).

For a number of reasons, the Court finds that Plaintiffs have failed to state a claim for fraud. Some of the Defendants are not alleged to have made any specific misrepresentations of fact. Additionally, the Plaintiffs have failed to allege a scheme to defraud as to any Defendant.

In their Third Amended Complaint, the Plaintiffs allege that Defendants represented that Plaintiffs would have $1,000,000 coverage per doctor per medical malpractice occurrence with a $3,000,000 aggregate in medical malpractice insurance for Drs. McDaniel, Banday and Byrnes.

Defendant Dr. Johnson, as Managing Partner for Defendant Central Illinois Emergency Physicians, and Richard Carlson, Executive Vice-President and CEO of St. John's Hospital, signed contracts regarding the coverage amounts. In September 2002, Dr. Johnson signed a Physician Partnership Agreement with each of Drs. McDaniel, Banday and Byrnes, which provided that each individual doctor would receive through National Guardian Risk Group, Inc., professional liability insurance coverage with a $1,000,000 per occurrence limit and $3,000,000 annual aggregate. Subsequently, Dr. Johnson signed an Amendment to Agreement for Emergency Department Management Services contract with St. John's Hospital, wherein the hospital agreed to pay Central Illinois Emergency Physicians for any incremental increases in professional liability insurance for provided personnel and Central Illinois Emergency Physicians agreed to ensure that personnel provided by it to St. John's Hospital shall maintain professional liability insurance coverage in an amount not less than $1,000,000 per occurrence with $3,000,000 annual aggregate.

The Plaintiffs further assert that on January 1, 2009 Dr. Johnson, in his capacity as Chief Executive Officer for Defendant National Guardian Risk Retention Group, signed an endorsement to the policy certifying that Central

Illinois Emergency Physicians was insured under the policy. Dr. Johnson also signed an endorsement certifying that Drs. McDaniel, Banday and Byrnes were additional named-insured doctors and were insured under a policy which provided $1,000,000 in coverage per doctor per occurrence, with an annual liability coverage limit of $3,000,000.

The Plaintiffs further assert that under section 3A of the Policy, the per occurrence limit of liability listed in the Policy declaration applied separately to each Additional Named Insured, so each Additional Named Insured had a separate per occurrence limit of liability of $1,000,000 for each occurrence, up to the annual aggregate of $3,000,000.

The Plaintiffs claim the Defendants knowingly made false representations of material fact in a scheme to induce the Plaintiffs to pay for services from physicians of Central Illinois Emergency Physicians, as covered by National Guardian Risk Retention Group. These false representations were also made to induce Drs. McDaniel, Banday and Byrnes to practice at St. John's Hospital under the impression they were satisfying their obligations to St. John's to practice with individual coverage of at least $1,000,000.

The Plaintiffs allege they justifiably relied on Defendants' false representations that each Central Illinois Emergency Physicians doctor had individual malpractice coverage of $1,000,000, as Drs. McDaniel, Banday and Byrnes performed services as Central Illinois Emergency Physicians personnel for St. John's Hospital, each believing he or she was individually covered by a medical malpractice limit of $1,000,000. The Plaintiffs say they justifiably relied on these representations regarding malpractice coverage. St. John's credentialed, accorded staff privileges to and permitted Central Illinois Emergency Physicians personnel—covered by the National Guardian Policy—to practice medicine at St. John's.

As a result of their justifiable reliance, the Plaintiffs allege they have been damaged by having to litigate the underlying Fugate case and negotiate settlement without the benefit of the promised $1,000,000 per doctor/$3,000,000 aggregate coverage.

Upon reviewing the allegations of the Third Amended Complaint, the Court concludes that Plaintiffs have failed to state a claim for fraud.

The Plaintiffs have not alleged how or when Emergency Consultants, Dr. Williams or Dr. King made misrepresentations of fact that were

justifiably relied on by the hospital or the assignor doctors. Count I does not reference what statements of fact these Defendants made to constitute misrepresentations. Each Defendant is alleged to have agreed to deny the hospital its full insurance coverage and "knowingly participated in the scheme to commit fraud." Because the Plaintiffs have failed to reference any statements made by Emergency Consultants, Dr. Williams or Dr. King, the fraud claims as to those Defendants will be dismissed.

Similarly, the Third Amended Complaint does not contain any allegations that Central Illinois Emergency Physicians, Dr. Johnson or National Guardian made any misrepresentations of fact that were justifiably relied on by the Hospital. Paragraphs 36 through 42 address contracts or other legal documents regarding the terms of the insurance policy. The Plaintiffs allege these documents were signed by Dr. Johnson, in his capacity as Managing Partner for Central Illinois Emergency Physicians or as Chief Executive Officer of National Guardian Risk Retention Group. In paragraphs 36 through 41, the Plaintiffs summarize the hospital's understanding of the contract provisions. Paragraph 42 provides that Defendants made knowingly false representations of material fact in a scheme to induce Plaintiff to pay for

services from physicians of Central Illinois Emergency Physicians, as covered by National Guardian Risk Retention Group, in order to induce Drs. McDaniel, Banday and Byrnes to practice at St. John's Hospital under the impression they were satisfying their obligations to St. John's to practice with individual coverage of at least $1,000,000.

Paragraphs 36 through 42 reflect nothing more than that the parties apparently have very different views of the amount of individual malpractice coverage for the doctors performing services at St. John's Hospital. In sum, the Plaintiffs have not alleged any misrepresentations of fact. Accordingly, these statements cannot serve as the basis for a fraud claim.

In discussing the Hospital's interpretation of contracts and other legal documents, the Plaintiffs have also failed to allege that Defendants engaged in a scheme to defraud. There are no facts suggesting the Defendants had the requisite intent to defraud the Hospital.

Additionally, there are no allegations that Defendants were damaged due to justifiable reliance on any misrepresentations by Dr. Johnson or any other Defendant. There is no allegation of a judgment or settlement in excess of coverage.

The Plaintiffs have failed to plead fraud or promissory fraud with particularity.  Because the Plaintiffs are unable to meet this heightened pleading standard, the Court will allow the motions to dismiss as to Count I.

C. Conspiracy claims

Count II consists of civil conspiracy claims asserted by all Plaintiffs against all Defendants.  "In order to state a claim for civil conspiracy, a plaintiff must plead a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill.2d 12, 23 (1998).  To assert a viable claim, "a plaintiff must plead the facts essential to his cause of action." *Id*. at 24.  One of the parties to the agreement must commit some act in furtherance of the agreement, which is itself a tort.  *See Adcock v. Brakegate*, 164 Ill.2d 54, 63 (1994).

The Plaintiffs claim that the Defendants conspired and entered into an agreement to accomplish an unlawful purpose—to breach both the insurance and bylaw coverage agreements and to defraud Plaintiffs.  The Defendants did this by agreeing to represent that each Central Illinois Emergency Physicians doctor would have individual malpractice coverage of $1,000,000

with annual aggregate coverage of $3,000,000, in a scheme to induce the Plaintiffs to serve and to pay for services from physicians of Central Illinois Emergency Physicians, as covered by National Guardian Risk Retention Group.

The Plaintiffs cite the endorsement Dr. Johnson signed on January 1, 2009. This certified that Drs. McDaniel, Banday and Byrnes were additional named-insured doctors and were insured under a policy which provided $1,000,000 in coverage per doctor per occurrence, with an annual liability coverage limit of $3,000,000. Each Defendant knowingly participated in the scheme. The Plaintiffs further contend that National Guardian, Emergency Consultants, Central Illinois Physicians, Dr. Johnson, Dr. Williams and Dr. King each affirmatively denied that Plaintiffs had $1,000,000 in coverage per doctor per occurrence with an annual liability coverage limit of $3,000,000 in the underlying Fugate case, despite the language of the agreements and policies and despite the Defendants' previous representations.

Accordingly, the Plaintiffs litigated the underlying Fugate case and negotiated a settlement without the benefit of the promised coverage.

The Court concludes that Plaintiffs are unable to assert a claim for civil conspiracy. To the extent the Plaintiffs are asserting that Defendants engaged in a civil conspiracy to defraud the Plaintiffs, the Court has already determined that Plaintiffs' fraud claims are without merit. "[T]he conspiracy claim fails if the independent cause of action underlying the conspiracy allegation fails." *See Coghlan v. Beck*, 984 N.E.2d 132, 151 (1st Dist. 2013). Because the fraud claims have failed, the civil conspiracy claims asserting fraud also fail.

To the extent that Plaintiffs base their civil conspiracy claim on an alleged breach of contract, a breach of contract is not a tort. A cause of action for civil conspiracy only exists if a party to the agreement commits a tort in furtherance of the agreement. *See Adcock*, 164 Ill.2d at 62-63. Because the Plaintiffs have not pled facts demonstrating how each Defendant committed tortious acts in agreement with each other for an unlawful purpose, their civil conspiracy claims which relate to breach of contract must be dismissed.

Accordingly, the Court will allow the motions to dismiss as to Count II.

D. Breach of contract claims

(1)

The first breach of contract claim is asserted as Count III by Plaintiff St. John's against Defendant Central Illinois Emergency Physicians and relates to the agreement for Emergency Department Management Services. St. John's alleges the agreement was a valid contract. Although St. John's performed its obligations under the agreement, Central Illinois Emergency Physicians did not—in the underlying Fugate case, when three provided doctors were named, the policy only provided $1,000,000 total coverage and not the $1,000,000 per doctor as Central Illinois Emergency Physicians was contracted to secure. St. John's claims this constituted a breach of the agreement.

St. John's alleges it was damaged by having to litigate the underlying Fugate case and negotiate a settlement without the benefit of the promised $1,000,000 per doctor/$3,000,000 aggregate coverage.

Central Illinois Emergency Physicians asserts that Plaintiffs' breach of contract claim, which was first asserted in the Second Amended Complaint filed on March 4, 2016, must be dismissed as to it because the claim "arises

out of patient care" and is barred by the statute of repose contained in 735

ILCS 5/13-212, which provides in pertinent part:

> [N]o action for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the action or omission or occurrence alleged in such action to have been the cause of such injury or death.

735 ILCS 5/13-212(a). Central Illinois Emergency Physicians notes that the

Fugates filed their lawsuit in Madison County, Illinois on March 22, 2011

alleging negligent patient care by Doctors Banday, McDaniel and Byrne;

Central Illinois Emergency Physicians and St. John's. This alleged negligent

patient care occurred between May 3 and 11, 2009. Accordingly, Central

Illinois Emergency Physicians contends the four-year statute of repose

contained in section 13-212 bars St. John's, given that the breach of contract

action was filed more than four years (and almost seven years) after the

patient care at issue.

The phrase "arising out of patient care" has been broadly interpreted. *See Brucker v. Mercola*, 227 Ill.2d 502, 521-22 (2007). The language "clearly covers any injuries that have their origin in, or are incidental to, a patient's medical care and treatment." *Id*. at 523-24. The language is sufficiently broad to include a third-party action for contribution. *See Uldrych v. VHS of Illinois, Inc.*, 239 Ill.2d 532, 536 (2011). The legislature intended that "*all* actions for damages 'arising out of patient care' to be subject to the limitations of section 13-212." *Id.*at 544 (emphasis in original). Central Illinois Emergency Physicians asserts that because this is a breach of contract action which "arises out of patient care" and was not timely filed, Count III should be dismissed with prejudice pursuant to section 13-212.

St. John's alleges the claim is timely because the applicable statute of limitation/repose is the ten year limitation on written contracts of 735 ILCS 5/13-206. It asserts section 13-212 does not apply because Central Illinois Emergency Physicians is a physician service provider, not a licensed medical corporation or physician employer. Section 13-212 "affords protection only to the specific health care providers listed therein and, in certain circumstances, to employees of such providers when acting within the scope

of their employment." *See Solich v. George Anna Portes Cancer Prevention Center of Chicago*, 158 Ill.2d 76, 82 (1994).

The court in *Solich* determined that a not-for-profit corporation that provided screening examinations could not avail itself of the section 13-212 limitations period, given that the statute is "applicable to actions against four specific categories of health care providers, namely, those physicians, dentists, registered nurses and hospitals 'duly licensed under the laws of this State.'" *Id*. at 82. St. John's contends that Central Illinois Emergency Physicians is not protected by section 13-212 because it is not among the specific health care providers enumerated in the statute.

Central Illinois Emergency Physicians notes that St. John's has previously alleged that Central Illinois Emergency Physicians is a physician employer. In a Memorandum Pursuant to Court Order of April 6, 2017 [d/e 82], the Plaintiffs described the relationship between "CIEP and the individual emergency room physicians" as a "typical employer-employee relationship" and, further, "the Agreement is tantamount to an employment agreement rather than a Partnership." In that Memorandum, St. John's claimed that various exhibits "further demonstrate that the nature of the

relationship is that of employment rather than partnerships." Additionally, "Dr. Schwartz is not a partner, but rather an employee, of CIEP" and "Dr. Byrnes' testimony demonstrates that . . . they have an employee, rather than partnership, status with CIEP." Finally, St. John's Memorandum states that "the emergency room physicians are not true partners but rather simply employees cloaked with the appearance of being a partner."

Based on the Plaintiffs' previous representations, the Court concludes that Central Illinois Emergency Physicians is a physician employer. In *Uldrych*, by affirming the appellate court's dismissal, the Illinois Supreme Court implicitly recognized that a physician employer, Suburban Surgical Associates, Ltd., is covered by the medical malpractice statute of repose. *See id*. at 540-43. This Court similarly concludes that Central Illinois Emergency Physicians is covered by section 13-212.

St. John's further asserts that the action does not "arise out of patient care" so as to invoke section 13-212. The Plaintiffs are not seeking damages from a party who is alleged to have been negligent and whose negligence was alleged to have resulted in injury or death by reason of medical malpractice. The statute of repose is meant "to prevent extended exposure of physicians

and other hospital personnel to potential liability for their care and treatment of patients." *Uldrych*, 239 Ill.2d at 542. There is no danger here that an allegedly negligent doctor or hospital will be subject to an extended period of liability for acts of medical malpractice. The dispute relating to the doctors' and hospital's malpractice liability has settled. In this breach of contract action, the hospital is the Plaintiff and the doctors have assigned their interests to the Plaintiffs.

St. John's alleges that even if this contractual dispute would not have resulted but for the medical care given to Patricia Fugate, the dispute does not "arise out of patient care" as required for application of Illinois's section 13-212 statute of limitations.

The Court disagrees and concludes that Count III is governed by the statute of limitations of section 13-212(a). The statute explicitly provides that it covers breach of contract, the claim asserted by the Hospital against Central Illinois Emergency Physicians. The origin of this case is a patient's medical care and treatment—specifically the medical care provided to Patricia Fugate by Drs. McDaniel, Banday and Byrnes on May 3, 4 and 11, 2009. Because the dispute concerns the amount of insurance coverage for

Ms. Fugate's medical care, the Court concludes that it unquestionably "arises out of patient care" as set forth in section 13-212. Because Count III was not filed within four years of May 11, 2009, it was not timely filed and must be dismissed.

(2)

The second breach of contract claim is asserted as Count IV by the Plaintiffs against Defendant National Guardian Risk Retention Group. Because the Defendant is an insurance company and not a physician, nurse, dentist or hospital, the limitations period of 735 ILCS 5/13-212 does not apply.

The Plaintiffs allege that Drs. McDaniel, Banday and Byrnes have assigned their interests in these causes of action to Plaintiffs St. John's Hospital, Patricia Fugate and Robert Fugate. Drs. McDaniel, Bandy and Byrnes were at all times relevant Additional Named Insureds on the National Guardian Risk Retention Group Policy, Policy Number PL 1021.

Although neither Plaintiff is a party to the insurance policy, the Court assumes that the assignment of interests of Drs. McDaniel, Banday and

Byrnes to St. John's, Patricia Fugate and Robert Fugate provides the Plaintiffs with standing to allege a breach of contract action against National Guardian.

The Plaintiffs allege the policy was a valid contract. The Plaintiffs and the assignors performed their obligations under the policy. By refusing to cover each Additional Named Insured at $1,000,000 each and refusing to provide $3,000,000 in aggregate coverage in violation of Section 3A of the policy, the Plaintiffs claim that National Guardian Risk Retention Group breached the policy.

The parties dispute whether the National Guardian policy is a per occurrence policy or per doctor per occurrence. At this stage of the case, the Court concludes that the language of the policy is susceptible to more than one meaning. Accordingly, the Plaintiffs have asserted a plausible claim.

In an exhibit [d/e 70] to their Third Amended Complaint, St. John's alleges that it did incur damages in executing a settlement in the Fugate litigation. St. John's further asserts that by denying insurance coverage, National Guardian breached the insurance policy. Accordingly, the Court concludes that Plaintiff's breach of contract claim is ripe.

Based on the foregoing, National Guardian's motion to dismiss the Plaintiff's breach of contract claim is denied.

E. Breach of fiduciary duty claims

In Count V, the Plaintiffs assert breach of fiduciary claims against Defendant Central Illinois Emergency Physicians. The Plaintiffs claim they were damaged by having to litigate the Fugate case.

In the Third Amended Complaint, the Plaintiffs alleged in paragraphs 72 through 75 that Central Illinois Emergency Physicians entered into partnership agreements with each of Drs. McDaniel, Banday and Byrnes, to supply professional medical services to medical facilities, benefitting both Central Illinois Emergency Physicians and its individual physician partners. The Plaintiffs allege Central Illinois Emergency Physicians were to manage and control business and affairs, while the individual physician partners practiced medicine for medical facility customers. Central Illinois Emergency Physicians and its physician partners would share interest in the profits and losses of the partnership. In an Opinion and Order entered on September 19, 2017, the Court struck paragraphs 72-75, to the extent they suggested that the allegations suggest a partnership relationship existed

between Central Illinois Emergency Physicians and Drs. McDaniel, Banday and Byrnes.

In paragraph 75 which has been stricken, the Plaintiffs asserted that, because of their partnership, Central Illinois Emergency Physicians owed a fiduciary duty to Drs. McDaniel, Banday and Byrnes, and owed a specific fiduciary duty to Drs. McDaniel, Banday and Byrnes to provide professional liability insurance in the coverage amount represented.

Defendants Emergency Consultants, Central Illinois Emergency Physicians, Dr. Johnson, Dr. Williams and Dr. King contend that, based on the law of the case doctrine, the Plaintiffs can no longer allege a fiduciary relationship existed between Central Illinois Emergency Physicians and Drs. Banday, McDaniel and Byrnes because of their "partnership." Accordingly, those Defendants claim the Court should dismiss Count V pursuant to Rule 12(b)(6).

The Plaintiffs allege there is an alternative basis for a breach of fiduciary duty claim. The Third Amended Complaint contains an allegation that Central Illinois Emergency Physicians agreed to obtain professional liability insurance for Drs. McDaniel, Banday and Byrnes, thereby asserting

the existence of a principal-agency relationship between the doctors and CIEP, where CIEP acted as the doctors' agent for the purpose of procuring liability insurance. Under Illinois law, an agent and principal have a fiduciary relationship as a matter of law. *See Khan v. BDO Seidman*, 408 Ill. App.3d 564, 592 (4th Dist. 2011).

The Plaintiffs further assert that, in addition to the clearly pleaded agent-principal relationship which created a fiduciary duty, the Plaintiffs have pleaded that Central Illinois Emergency Physicians agreed to procure professional liability insurance for the doctors, thereby acting as their insurance broker. An insurance broker has been defined as:

> One who procures insurance and acts as a middleman between the insured and the insurer, and solicits insurance business from the public under no employment from any special company, but, having secured an order, places the insurance with the company selected by the insured, or, in the absence of any selection by him, with the company selected by such broker.

*Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 264 (7th Cir. 1986) (citations omitted). The Plaintiffs contend that Central Illinois Emergency Physicians functioned as an insurance broker for the doctors and breached its duty to faithfully procure professional liability insurance which should have covered each individual doctor for $1,000,000.

Even assuming the Plaintiffs alleged an agent-principal relationship and/or that Central Illinois Emergency Physicians acted as an insurance broker in agreeing to obtain professional liability insurance, the Plaintiffs have not asserted a viable breach of fiduciary claim under Illinois law. Section 2-2201 applies to an "insurance producer, registered firm and limited insurance representative" and states that each shall exercise "ordinary care and skill" in procuring coverage. *See* 735 ILCS 5/2-2201(a). Section 2-2201(b) limits the right of an insured to assert a cause of action against an "insurance producer, registered firm, or limited insurance representative" concerning, among other things, the procurement or failure to procure any policy of insurance. *See* 735 ILCS 5/2-2201(b). Specifically, it limits the right to allege breach of fiduciary duty unless the "conduct upon which the cause of action is based involves the wrongful retention or misappropriation" of money that was received as insurance premiums by the insurance broker or producer. Section 2201(b) narrowly defines the scope of a breach of fiduciary duty claim against and insurance producer or broker and is limited to claims involving wrongful retention or misappropriation of premiums. *See*

*M.G. Skinner and Associates Insurance Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017).

The dispute here concerning the insurance coverage is whether it is per individual doctor per occurrence or simply per occurrence. Even assuming the Plaintiffs' position is correct and their factual allegations are true, the Plaintiffs' claims simply do not involve the wrongful retention or misappropriation of premiums. Accordingly, the Plaintiffs are unable to assert a plausible claim for breach of fiduciary duty against Central Illinois Emergency Physicians.

## III.   CONCLUSION

Based on the foregoing, the motion to dismiss pursuant to Rule 12(b)(6) of Defendants Emergency Consultants, Inc., Central Illinois Emergency Physicians, P.C., James A. Johnson, M.D., Robert M. Williams, M.D., and Derik K. King, M.D., will be allowed. The motion to dismiss pursuant to Rule 12(b)(6) of Defendant National Guardian Risk Retention Group, Inc., will be allowed in part and denied in part.

Ergo, the motion to dismiss Counts I, II, III and V of Defendants Emergency Consultants, Inc., Central Illinois Emergency Consultants, P.C.,

James A. Johnson, M.D., Robert M. Williams, M.D., and Derik K. King, M.D. [d/e 87] is ALLOWED. Those parties shall be, and hereby are, terminated as Defendants.

The motion to dismiss of Defendant National Guardian Risk Retention Group, Inc. [d/e 89] is ALLOWED in part and DENIED in part.

The motion is DENIED as to the breach of contract claims in Count IV. It is ALLOWED as to the fraud claims asserted in Count I and the conspiracy claims of Count II.

This matter is referred to United States Magistrate Judge Tom Schanzle-Haskins for the purpose of scheduling a discovery conference.

ENTER: May 17, 2018

FOR THE COURT:

/s/ *Richard Mills*
Richard Mills
United States District Judge