E-FILED
Friday, 06 March, 2020 04:44:43 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

ST. JOHN'S HOSPTIAL OF THE HOSPITAL SISTERS OF THE THIRD ORDER OF ST. FRANCIS, PATRICIA FUGATE and ROBERT FUGATE,

Plaintiffs,

v.

NATIONAL GUARDIAN RISK RETENTION GROUP, INC.,

Defendant.

Case No. 15-3292

OPINION

RICHARD MILLS, United States District Judge:

Pending is the Defendant's motion for summary judgment as to Count IV of Plaintiffs' Third Amended Complaint.

## I. INTRODUCTION

The only remaining count in this case is Count IV of the Plaintiffs' Third Amended Complaint. Count IV is a breach of contract claim by Plaintiffs St. John's Hospital, Patricia Fugate and Robert Fugate, as assignees, against Defendant National Guardian Risk Retention Group, Inc. ("National Guardian"). The Plaintiffs allege National Guardian breached the contract by failing to provide coverage, resulting in damage.

## II. FACTUAL BACKGROUND

Central Illinois Emergency Physicians, LLP ("CIEP") entered into an Agreement for Emergency Department Management Services ("Agreement") with St. John's Hospital to provide physician services. John Byrnes, M.D., Elizabeth McDaniel, D.O. and Aamir Banday, M.D. were employed by CIEP and provided physician services at St. John's Hospital pursuant to the Agreement.

On March 22, 2011, Patricia and Wallace Fugate filed a multi-count medical malpractice action against eighteen named defendants, including St. John's Hospital, CIEP and three emergency medical physicians—Drs. Byrnes, McDaniel and Banday—alleging they failed to timely diagnose and treat Ms. Fugate's mastoiditis, such that Ms. Fugate developed a brain abscess which required surgery and that she sustained permanent injuries. *See Fugate v. McDaniel*, *et al.*, No. 11-L-27 (Macoupin County). The Fugates alleged the delay led to Mrs. Fugates' permanent injuries.

At the time that care was rendered to Patricia Fugate, paragraph 9 on page 8 of the Agreement was in effect and stated as follows:

> Liability Insurance. [CIEP], at no cost to Hospital, shall ensure that personnel provided by it shall maintain professional liability insurance coverage (primary and excess) in an amount not less than $2,000,000 per occurrence and $4,000,000 annual aggregate (only $1,000,000 per occurrence and $3,000,000 annual aggregate will be provided until 11/1/01, at which time the full coverage will commence), subject to the terms and conditions of the individual policies.

Paragraph 9 was subsequently amended to require professional liability insurance coverage (primary and excess) in an amount not less than $1,000,000 per occurrence and $3,000,000 annual aggregate. Additionally, at all relevant times, the St. John's Medical Staff Bylaws mandated that all members of the medical staff were required to have professional liability insurance in the amount $1,000,000 per occurrence and $3,000,000 annual aggregate.

National Guardian issued a policy identifying CIEP as a named insured, Policy No. PL1021, which was in effect from January 1, 2009, to January 1, 2010. This is an occurrence-based policy. The facts which gave right to the tort claim relate to events which transpired on May 3, 4 and 11, 2009, which is within the policy period. St. John's Hospital alleges it was required to pay incremental increases in the cost of the professional liability premiums on the National Guardian Policy. In May 2009, the month the alleged underlying torts occurred, St. John's Hospital's monthly contribution to CIEP's premium was $9,888.

Dr. Byrnes, McDaniel and Banday were additional named insureds under National Guardian's medical malpractice insurance Policy No. PL1021 with CIEP, which provides $1 million per occurrence to its insured and additional named insureds. An "occurrence" under PL 1021 is expressly defined as follows:

> a series of interrelated Medical Professional Services rendered by an insured, causing injury to third party persons which is neither intended nor expected from the standpoint of the Insured. A series of related medical treatments to the same person shall be considered one Occurrence regardless of (1) the

> number of claims made or Suits brought and (2) the number of insureds names in such claims or Suits.

Additionally, Policy No. PL1021 expressly prohibits any action against National Guardian (the Company) unless the insured's obligation to pay is "finally determined, either by judgment against the insured after actual trial, or by written agreement by the insured, the claimant and the Company."

Once National Guardian's additional named insureds were sued in the underlying *Fugate* litigation, National Guardian provided counsel to them. The Fugates alleged that Drs. McDaniel, Banday and Byrnes were each separately negligent in their care and treatment of Ms. Fugate in the Emergency Department at St. John's on three separate occasions. Because of the alleged negligence, the Fugates asserted the defendants in *Fugate* failed to diagnose and treat mastoiditis such that Ms. Fugate developed a brain abscess which required surgery and resulted in permanent injuries. Consultants were retained and experts were disclosed who supported the additional named insureds' actions. During the course of the *Fugate* litigation, various defendants settled out of the case.

On June 22, 2015, St. John's Hospital settled with the Fugates. A copy of the "Confidential Agreement" was subsequently produced by the Plaintiffs in this action pursuant to United States Magistrate Judge Tom Schanzle-Haskins' August 6, 2018 Order. Under the express terms of the settlement agreement between St. John's Hospital and the Fugates, a/k/a the "Confidential Agreement," St. John's settled

individually with the Fugates for $5 million and denied any wrongdoing or negligence. More importantly, none of National Guardian's additional named insureds were parties to the "Confidentiality Agreement." Illinois Seventh Circuit Judge Kenneth Deihl found that St. John's Hospital's settlement with the Fugates was in good faith. None of the National Guardian insureds were part of that good faith finding.

On January 26, 2016, a series of three Assignment Agreements were executed between St. John's, the Fugates and National Guardian's additional Named insureds—Drs. Byrnes, McDaniel and Banday. The Assignments assigned Drs. Byrnes, McDaniel and Banday's rights under a series of agreements to Plaintiffs. The *Fugate* litigation proceeded against National Guardian's additional named insureds until August 22, 2016, when Judge Deihl dismissed Drs. Byrnes, McDaniel and Banday from the case with prejudice pursuant to 735 ILCS 5/2-619. At no time was a judgment or settlement entered against Drs. Byrnes, McDaniel or Banday in the *Fugate* litigation, and none of them paid any amount of money to the Fugates.

The Plaintiffs allege that, because of National Guardian's denial of coverage, St. John's Hospital and the individual physician Defendants were facing exposure at trial for which they had specifically procured insurance to protect them. St. John's Hospital settled the underlying *Fugate* litigation. The Defendants state that, on

information and belief, over $7 million in settlement proceeds have been collected by the Fugates in the underlying *Fugate* litigation.

The Plaintiffs claim that National Guardian has always contended that the coverage, which is applicable to the litigation filed on behalf of Patricia Fugate and Robert Fugate, is the "shared" amount of $1,000,000 rather than $1,000,000 per physician Defendant (for an aggregate of $3,000,000).

St. John's Hospital and the individual Physician Defendants contend each physician Defendant is entitled to $1,000,000 per occurrence in coverage, for an aggregate of $3,000,000.

Plaintiffs St. John's Hospital, Patricia Fugate and Robert Fugate allege Drs. McDaniel, Banday and Byrnes—as additional named insureds--have assigned their interests in these causes of action to them. St. John's Hospital has alleged it is a third-party beneficiary of the Policy based on the terms of the Agreement, the Amendment, the Bylaws, the intent and actions of the Parties and the undisputed fact that St. John's Hospital paid a substantial portion of the Policy premiums as required in the Amendment.

The Plaintiffs assert that, given the allegations against St. John's Hospital in the tort claim were based on the alleged agency of the individual Physician Defendants, the settlement payment was necessarily for the alleged acts and omissions of the individual Physician Defendants, alleged acts and omissions for

which it had specifically required insurance coverage via the Agreement, the Amendment and the Bylaws, and the alleged acts and omissions which were covered by the Policy of insurance for which St. John's Hospital paid a substantial portion of the premiums in order to protect itself against exactly this type of exposure.

In considering a previous motion to dismiss filed by National Guardian, the Court noted that "[a]lthough neither Plaintiff is a party to the insurance policy, the Court assumes that the assignment of interests of Drs. McDaniel, Banday and Byrnes to St. John's, Patricia Fugate and Robert Fugate provides the Plaintiffs with standing to allege a breach of contract action against National Guardian" and that the claim is ripe for adjudication. *See* Doc. No. 94, at 23-24.

Plaintiffs St. John's Hospital and the Fugates filed this cause of action against National Guardian and CIEP for fraud, conspiracy and a host of alleged contract breaches. After multiple motions to dismiss, the number of remaining claims has been reduced. On March 29, 2019, following its fourth motion to dismiss, the Court granted National Guardian leave to file a motion for summary judgment because it was relying on matters outside the pleadings.

National Guardian claims the undisputed facts establish that none of its insureds were found liable in the underlying *Fugate* litigation and, therefore, its duty to indemnify under Policy No. PL1021 cannot be triggered and will never be

triggered by Plaintiffs' assigned rights because each of the additional named insureds were dismissed with prejudice in the *Fugate* litigation in August 2016.

## III. DISCUSSION

Legal standard

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The Court construes all reasonable inferences in favor of the non-movant. *See Siliven v. Indiana Dept. of Child Services*, 635 F.3d 921, 925 (7th Cir. 2011). To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture." *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted). Ultimately, there must be enough evidence in favor of the non-movant to permit a jury to return a verdict in its favor. *See id*.

Analysis

Under Illinois law, the interpretation or construction of an insurance policy is a question of law and is appropriate for resolution on summary judgment. *See Erie Ins. Exchange v. Imperial Marble Corp.*, 957 N.E.2d 1214, 1219 (3d Dist. 2011). An "assignment operates to transfer to the assignee all of the assignor's right, title or interest in the thing assigned." *Community Bank of Greater Peoria v. Carter*, 283

Ill. App.3d 505, 508 (1st Dist. 1996). By acquiring the same rights as the assignor, the assignee stands in the shoes of the assignor. *See id*.

"[T]he burden is on the insured to prove that its claim falls within the coverage of an insurance policy." *Addison Ins. Co. v. Fay*, 232 Ill.2d 446, 453 (2009). If the insured meets that burden, the insurer must then show that a limitation or exclusion applies. *See id*. at 453-54.

To the extent that Plaintiffs claim National Guardian's motion for summary judgment is a motion to reconsider previous rulings on Orders denying motions to dismiss, the Court disagrees. National Guardian was granted leave to file a motion for summary judgment when its previous motion to dismiss relied on matters outside the pleadings. Because the legal standard governing motions to dismiss is different from that associated with a motion for summary judgment, the Court does not consider this to be a motion to reconsider any prior decisions.

National Guardian asserts the Plaintiffs' assigned rights do not trigger National Guardian's duty to indemnify because there has been no finding of fault or judgment against National Guardian's additional named insureds—Drs. Banday, McDaniel and Byrnes—each of whom was dismissed from the *Fugate* litigation. The Plaintiffs assert the third amended complaint adequately states a claim for breach of contract and summary judgment thus is not warranted.

National Guardian further asserts that, as assignees, the Plaintiffs have no breach of contract action as a matter of law because National Guardian's additional named insureds were dismissed in the *Fugate* litigation, which does not trigger its duty to indemnify. The Plaintiffs allege St. John's Hospital has sufficiently alleged it is a third-party beneficiary of the Policy and that summary judgment should thus be denied. They contend that any factual determination on its status as an intended beneficiary would be premature.

(1) Third Party Beneficiary

The Plaintiffs contend St. John's Hospital has standing to bring a claim for breach of contract as a third-party beneficiary of the Policy. St. John's also alleges that it actually paid for a portion of the premiums for the subject Policy. The Illinois Supreme Court has discussed third-party beneficiaries:

> The rule is settled in this State that if a contract be entered into for a direct benefit of a third person not a party thereto, such third person may sue for breach thereof. The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract. If direct, he may sue on the contract; if incidental he has no right of recovery thereon.

*Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 257-58 (1931). "A third party may only sue for breach of contract if the contract was entered into for the party's direct benefit; if the third party's benefit is merely incidental, he has no right of recovery on the contract." *Shank v. H.C. Fields*, 373 Ill. App.3d 290, 295 (4th Dist. 2007).

There is a strong presumption against the creation of contract rights in third parties. *See id*.

The insurance agreement between National Guardian and St. John's Hospital does not mention St. John's Hospital or the class to which it belongs. The policy mentions intended beneficiaries of its indemnity provision with CIEP, CIEP's physicians and the class of tort claimants in favor of who judgment legally obligating payment by the insureds has been entered. The policy provides that National Guardian "will pay on behalf of the Insured those sums which the Insured is legally obligated to pay as Damages." The policy provides the "insured" means "Named Insured" or "Additional Named Insured."

Because St. John's Hospital is not expressly mentioned as a third-party beneficiary by name or as part of a class, the Court concludes that National Guardian and CIEP did not contract for and intend to directly benefit St. John's. Given that it was a co-defendant in the *Fugate* litigation, St. John's may benefit incidentally due to the existence of additional insurance applicable to CIEP's physicians. A party who benefits incidentally has no right to recovery on the contract. *See Carson Pirie Scott*, 346 Ill. at 257-58.

To the extent the Plaintiffs contend that other contracts and agreements to which St. John's was not a party grant third-party beneficiary status to St. John's Hospital, the Court is not persuaded. The insurance policy contains an "other

insurance clause" providing that this policy is considered to be in excess of any other valid insurance policy available. This establishes that National Guardian did not warrant that the policy issued to CIEP would satisfy duties or obligations CIEP had to other entities.

The Plaintiffs allege St. John's has actually paid for a portion of the premiums for the subject policy. Exhibit A to their response to the summary judgment motion is an invoice sent by CIEP to St. John's Hospital. Those parties agreed that St. John's would pay insurance premiums to CIEP, not to National Guardian. There is no indication National Guardian ever sent an invoice to St. John's Hospital. Moreover, the Plaintiffs do not allege St. John's ever made a direct payment to National Guardian. Moreover, the Plaintiffs cite no authority for the proposition that payment by a non-party to a contract to provide funding or payment somehow classifies the party as a third party beneficiary.

Based on the foregoing, the Court concludes that St. John's Hospital has not shown National Guardian and CIEP intended for St. John's to be a third-party beneficiary to PL1021. The Fugates also do not qualify as third-party beneficiaries because no legal obligation or judgment has been entered against National Guardian's additional named insureds to trigger an obligation to indemnify.

(2) Plaintiffs as Assignees

Accordingly, Plaintiffs St. John's Hospital, Patricia Fugate and Robert Fugate are assignees of National Guardian's Insurance Policy, PL 1021, and thus stand in the same shoes as the additional named insureds which include Drs. Banday, McDaniel and Byrnes. Doctors Banday, McDaniel and Byrnes never admitted any fault and did not enter into a confession of judgment or pay any sum in the *Fugate* litigation. The claims against the doctors were simply dismissed with prejudice and without costs by Judge Deihl on or about August 22, 2016. Doctors Banday, McDaniel and Byrnes did not incur or assign any obligation, debt or payment due as a result of their treatment rendered to Ms. Fugate that was at issue in the *Fugate* litigation. The Court concludes that, because the Macoupin County Illinois Circuit Court dismissed with prejudice Drs. Banday, McDaniel and Byrnes in the *Fugate* litigation, the additional named insureds cannot be found liable for their alleged conduct in that case.

By extension, the Plaintiffs as assignees of Drs. Banday, McDaniel and Byrnes do not have a viable breach of contract action against National Guardian. The duty to indemnify under Illinois law is narrower than the duty to defend. *See Selective Ins. Co. of South Carolina v. Target Corp.*, 845 F.3d 263, 269 (7th Cir. 2016). The issue of indemnification is not ripe until the liability of the insured is established. *See Medical Assur. Co. v. Hellman*, 610 F.3d 371, 375 (7th Cir. 2010).

Insurance Policy PL1021 provides that National Guardian's duty to indemnify is when its insureds are liable "for payment of Damages arising out of any Medical Incident or Related Medical Incidents." Damages as defined under the Insurance Policy, which triggers indemnity, are defined as "the monetary portion of any judgment, award, or settlement, including interest thereon, which shall not exceed the stated amount for any Occurrence."

According to Section C of PL 1021, "Action against The Company," an action against National Guardian is prohibited "until the amount of the Insured's obligation to pay shall have been finally determined, either by judgment against the Insured after actual trial (and after final resolution of any appeals), or by written agreement of the Insured, the claimant and the Company." Because that has not occurred in this case, National Guardian's duty to indemnify has not been triggered. St. John's Hospital's separate obligation pursuant to its settlement with the Fugates does not implicate its assigned rights under the Assignment Agreements. National Guardian is not required to indemnify St. John's Hospital and the Fugates, as assignees, because there will never be a judgment, written agreement by the insured, the claimant and National Guardian on liability or damages in the *Fugate* litigation regarding National Guardian's additional named insureds to trigger the duty to indemnify.

Even upon construing all inferences in favor of the Plaintiffs, the Court concludes that summary judgment is warranted on the Plaintiffs' breach of contract claim because the Plaintiffs do not qualify as third party beneficiaries and cannot recover as assignees of the additional insureds. Accordingly, National Guardian is entitled to summary judgment.

Ergo, the motion of Defendant National Guardian Risk Retention Group, Inc. for summary judgment as to Count IV [d/e 112] is GRANTED.

The Clerk will enter Judgment and close this case.

ENTER: March 6, 2020

FOR THE COURT:

/s/ *Richard Mills*
Richard Mills
United States District Judge